Joseph A. MESSERSMITH, Murphy Road, Chadds Ford, Pennsylvania, Plaintiff,

v.

DELAWARE TRUST COMPANY, a Delaware corporation, Delaware Trust Company, a Delaware corporation, executor under the Will of Michael D. McMonigle, deceased, Francis McMonigle, and Little Sisters of the Poor, Inc., a Charitable Corporation of the State of Delaware, Defendants.

Court of Chancery of Delaware.

New Castle.

Dec. 20, 1965.

———◆———

David S. Keil and Carl Goldstein, of Keil & Keil, Wilmington, for plaintiff.

David F. Anderson, of Berl, Potter & Anderson, Wilmington, for defendant, Delaware Trust Co.

Francis A. Reardon, Wilmington, for defendant Delaware Trust Co., executor.

Joseph M. Kwiatkowski, Wilmington, for defendant Little Sisters of the Poor, Inc.

John A. Faraone, Wilmington, for defendant, Francis McMonigle.

SEITZ, Chancellor:

This is a dispute over the disposition of the proceeds of a so-called joint checking account and a joint savings account in the Delaware Trust Company ("Bank").

Michael D. McMonigle ("Michael") executed the two account cards along with the plaintiff, who was his nephew by marriage. Thereafter Michael died and a dispute arose concerning the proper disposition of the proceeds of the accounts. Plaintiff then brought this action against the Bank seeking payment of such proceeds "so that said funds may be held in trust for the benefit of the Settlor's [Michael] son, to wit, Francis McMonigle." On the Bank's motion the Bank, as Michael's executor, Francis McMonigle

and Little Sisters of the Poor, Inc. ("Sisters") were added as defendants. The Bank was added as executor because of its interest in claiming that it was entitled to the proceeds. Francis and the Sisters were joined because they have an interest under the terms of Michael's will which was executed before the date of the alleged oral trust.

Both the executor and the Sisters oppose plaintiff's application. The son, Francis, apparently takes a similar position. For convenience, I shall refer to the Bank as executor, the Sisters and Francis collectively as defendants.

Plaintiff's complaint sought the proceeds based on the language of the instruments creating the two accounts. However, and this is important, plaintiff alleged that he sought them in order that he might carry out an oral trust agreement made with Michael about September 18, 1963. He alleged that under their oral trust it was agreed that the proceeds of the sale of Michael's realty would be placed in a joint account; that plaintiff would pay to Francis from income and principal those sums deemed necessary for his care and maintenance; that upon Francis' death the remaining funds in the accounts would be plaintiff's property absolutely.

Plaintiff did draw money from the accounts to pay Francis during Michael's lifetime. Michael died April 5, 1964 and plaintiff continued to make payments for Francis' benefit until a "hold" order was placed against the accounts. This action followed.

 Defendants' position is that where, as here, money belonging to one party (Michael) is deposited in a joint account, the title of the survivor must rest upon gift or trust and depends upon the intent of the deceased party. Assuming without deciding that this is so, the point which defendants overlook is that the language of the instrument of deposit may be the con-

trolling evidence of intent insofar as the contractual aspect of the matter is concerned. The Supreme Court of Delaware opinion of Walsh v. Bailey (Del.Ch.) 197 A.2d 331 is controlling on this point. It stands for the rule that where the instrument creating the joint account clearly reflects the intent of the parties with respect to the disposition of the proceeds upon the death of one parol evidence is inadmissible to permit the finding of some other intent by adopting another construction of the language. Although it is not cited therein, I am satisfied that insofar as the Orphans' Court opinion of Rauhut v. Reinhart, 22 Del.Ch. 431, 180 A. 913, reflects a different rule, it was tacitly overruled in the Walsh case.

The first issue, then, is whether the rule of Walsh v. Bailey is applicable to the accounts here involved.

Insofar as here material, the language of the both joint accounts here involved is the same and is as follows:

"We hereby declare that we are joint owners of the money deposited in * * * which we have this day opened in our names in DELAWARE TRUST COMPANY, and in consideration of said mutual deposit we do further declare that said funds, together with any additional deposits be, and our joint property to be held for us as joint tenants with the right of survivorship. Each of us shall have full power, either before or after the death of the other, to make withdrawals from said joint account and upon the death of either, the balance then remaining in said joint account shall be the absolute property of the survivor and the DELAWARE TRUST COMPANY is hereby authorized and directed to deal with the survivor as sole and absolute owner thereof.

"We hereby jointly and severally for ourselves, our and each of our heirs, executors, administrators and assigns, agree to indemnify and save harmless DELAWARE TRUST COMPANY from any and all liability, loss or damage by reason of the payment to the survivor of the balance remaining in said account at time of the death of either of us."

█ Certainly the language in the instruments creating the accounts which provides that " * * * upon the death of either, the balance then remaining in said joint account shall be the absolute property of the survivor * * *" is at least as clear and comprehensive in effect as that relied upon by the Supreme Court in the Walsh case. Thus, no parol evidence was admissible to vary the clear meaning of the language in the instruments and legal title to the money passed to plaintiff.

█ The Supreme Court ruling in the Walsh case is presumably based on the fact that parties are free to contract as to survivorship rights in joint account situations and when they clearly do so the court must give conclusive effect to the language of their agreement. However, based upon my experience with some of these matters, the banking institutions might well consider the desirability of making a change in this area. Thus, in the printed portion of the form used to create such accounts, they might omit language which has the effect of providing that the proceeds become the absolute property of the survivor. If a "survivor-owner" provision is desired by parties opening such an account, I believe it should be required that appropriate language to that effect be specially inserted. In this way the parties to the signing may be more likely to be made aware of the possible ultimate disposition of the proceeds. Many times these accounts are opened merely as a convenience for one party who needs the assistance of another to pay his bills, etc. Yet, under the standard forms now employed, he may well create a situation where no evidence is

admissible to show that he had such a limited intent. Such a change would in no wise weaken the protection otherwise offered to the institution involved. If the banks do not feel free to make the change, it could be a matter for the Legislature.

The defendants also claim that the evidence shows a breach of fiduciary duty by plaintiff in his dealings with Michael with respect to the creation of these accounts.

■ It is clear that if an aggrieved party can show some independent basis for relief, e. g., mutual mistake, the fact that the terms of the instrument of deposit are clear is not decisive. Compare Walsh v. Bailey, above. Consequently, if plaintiff breached any fiduciary duty relevant to the present proceeds, this court could grant appropriate relief.

■ Plaintiff contends that defendants did not properly raise in their pleadings any issue as to breach of trust. I need not decide this matter because, assuming plaintiff owed Michael a fiduciary duty at the critical time, I am satisfied that he discharged any burden he may have had to show that the transaction was fair to Michael. After all, although elderly, it was Michael who sought plaintiff out to undertake the obligations imposed. His mental state at the time is not under attack. I cannot say that it is unfair that plaintiff should have any proceeds left if he survives Francis, who is a dependent but younger man. Michael had confidence that plaintiff would take care of a son whose welfare was his prime concern.

I come finally to what I consider the unusual aspect of this case. Plaintiff's complaint spells out in detail an oral trust arrangement made between plaintiff and Michael. It was on this premise and in furtherance of his duty thereunder that plaintiff sought the money. Yet, at this time, plaintiff does not rely on such an agreement. He now contends in his brief that he had only a "moral" obligation to perform the terms of the oral trust. Allegedly pursuant to such feeling, after Michael's death and after the dispute concerning the proceeds broke out, he executed a Declaration of Trust having terms parallel to those of the oral trust alleged in the complaint.

■ May plaintiff be permitted to claim under the circumstances that upon Michael's death he had no legally or equitably binding obligation with respect to the proceeds and that he was only morally bound to do what he did? I think it clear that plaintiff must be held to the terms of the oral trust which he himself alleged and which comports with the realities. This conclusion is not inconsistent with a recognition that he took legal title to the money pursuant to the terms of deposit agreements. This is so because I am not attempting to place another construction on the language of such instruments by the use of parol evidence. Rather, I find that by virtue of the oral trust agreement plaintiff is subject to an independent and admitted obligation with respect to such proceeds and it would be a fraud for plaintiff to conduct himself otherwise with respect to such proceeds. Indeed, I do not believe he intended or intends to do so. Thus, we are not dealing only with a "moral" obligation situation.

But the point here is not that the Declaration of Trust differs from the oral trust. The important factor is that the oral trust allegedly provided that plaintiff was to get any balance absolutely after the death of Francis. I think it reasonable to infer from the credible evidence that plaintiff and Michael failed to consider what would happen to any balance if plaintiff predeceased Francis who then died leaving undistributed proceeds in the accounts.

■ I think plaintiff would agree that there is no doubt but that it was contemplated that the trust was to continue until the death of Francis, even though he sur-

vived the plaintiff. I further infer that the parties failed to agree as to the disposition of the proceeds in such an event. This being so, I believe it must be held that if plaintiff predeceases Francis, then upon Francis' death the remainder interest, if any, passes under Michael's will.

The judgment hereon will declare that plaintiff is entitled to receive the entire proceeds and hold them in trust to use for the maintenance of Francis for his life. If plaintiff survives Francis, he will be entitled to any balance absolutely. If plaintiff predeceases Francis, the trust will continue until Francis' death and any balance then remaining will pass under Michael's will.

Other points made by the parties do not require independent consideration.

Present order on notice.