COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ABIGAIL M. LEGROW
MASTER IN CHANCERY

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Submitted:  November 18, 2015
Final Report:  February 11, 2016

John H. Williams, Jr., Esquire
Law Office of John Williams, P.A.
1225 N. King Street, Suite 700
Wilmington, DE 19801

Ms. Karen P. DeRamus
134 Killoran Drive
New Castle, DE 19720

Ms. Renee D. Simmons
810 E. Basin Road
New Castle, DE 19720

Ms. Pamela A. Cottingham
157 Whitburn Place
Newark, DE 19702

     Re:   *IMO the Estate of James L. Simmons, Sr.;*
           *Simmons v. DeRamus, et al.*
           C.A. No. 9965-ML

Dear Parties and Counsel:

The petitioner, who is the executor of the captioned estate, filed this action

to require the beneficiaries of the estate to (1) repay certain amounts allegedly paid

to them in error by the executor and (2) execute a deed conveying to the executor

the beneficiaries' interest in the decedent's real estate.  The executor contends the

defendant beneficiaries received more than they were entitled to receive from the estate because the executor mistakenly treated as estate assets funds from a jointly titled bank account. The executor also contends that a portion of the payment to the beneficiaries was made to purchase their interest in the decedent's real property and that the beneficiaries therefore should be required to execute a deed documenting that conveyance. The beneficiaries filed a counterclaim asserting that the funds in the jointly titled account should be distributed to all the residuary beneficiaries and that the executor has not fully distributed the estate assets. This is my final report after trial.

## BACKGROUND

The decedent, James L. Simmons, Sr. (the "Decedent"), died on October 20, 2011. The Decedent's last will and testament left the residue of his estate in equal shares to his six children: James L. Simmons, Jr. ("James"),[1] Richard E. Simmons ("Richard"), Renee D. Simmons ("Renee"), Karen P. DeRamus ("Karen"), Pamela A. Simmons ("Pamela"), and Anna D. Simmons ("Anna").[2] The will named James as executor of the Decedent's estate, and James was granted letters testamentary on November 14, 2011.[3]

---

[1] Because several parties share the same last name, I use first names for the sake of clarity. No disrespect is intended.
[2] Plaintiff's Exhibit ("PX") D.
[3] PX D, K.

At the time of his death, the Decedent had the following assets: (1) a home located at 437 Robinson Drive, Wilmington DE 19801 (the "Property"), (2) a checking account at Citizens Bank, with a date of death balance of $1,578.06 (the "Checking Account"), (3) a savings account at PNC Bank in the name of the Decedent and Richard, with a date of death balance of $113,209.69 (the "PNC Savings"), (4) a savings account at Citizens Bank in the name of the Decedent and James, with a date of death balance of $101,166.56 (the "Citizens Savings"), and (5) a Buick LaCrosse sedan.[4] The Decedent also had a life insurance policy naming Richard as the beneficiary. According to an appraisal obtained by James, the Property was valued at $38,000 as of November 28, 2011.[5] The Decedent's car was worth $14,025.00. On the inventory filed with the Register of Wills, no value was attributed to the personal property in the Decedent's home. The respondents, who are Karen, Renee, and Pamela, have not challenged the appraisal of the Property or the value attributed to the car.

The record reflects that the PNC Savings was jointly titled to "[the Decedent] or Richard," while the Citizens Savings was jointly titled to the Decedent and James.[6] The Decedent created both accounts in 1976 and asked James and Richard to sign paperwork related to the account on which they were

---

[4] PX C (Amended Inventory dated May 16, 2012).
[5] PX B.
[6] PX I, H.

listed as account holders.  The Decedent told James about the Citizens Savings when it was opened but did not say anything else about it in the three decades before his death.  The Decedent did not tell Richard about the PNC Savings or even explain to Richard the purpose of the paperwork he signed.  Thirteen years later, the Decedent executed his will leaving his estate in equal shares to his children.

Neither James nor Richard made deposits to the savings accounts during the Decedent's lifetime, nor did they withdraw any funds from the accounts before the Decedent's death.  The account agreement for the Citizens Savings indicates that the bank presumes that "any joint account established with us is a joint tenancy with right of survivorship."[7]  The agreement goes on to explain the meaning of a survivorship account.[8]

James did not initially retain counsel to advise him regarding the administration of the estate.  Failing to realize the potential significance of the jointly held accounts, James listed the Citizens Savings as an estate asset on the inventory he filed *pro se* with the Register of Wills (the "Initial Inventory").  James also paid the Decedent's funeral expenses and certain other estate expenses from the Citizens Savings.  In December 2011, believing that the administration of the

---

[7] PX J.
[8] *Id.*

estate nearly was completed, James distributed what he believed to be the net estate assets to the six beneficiaries. Each of the respondents received a check for $22,270.83, representing one-sixth of the remaining balancing in the Citizens Savings Account, one-sixth of the value of the Property, and one-sixth of the value of the Decedent's car.[9]

A dispute then arose between the siblings regarding their obligation, if any, to execute deeds transferring the property to James. As a result, James sought the advice of counsel, who discovered that the two savings accounts were jointly titled. James, with the assistance of counsel, then filed an amended inventory dated May 16, 2012 (the "Amended Inventory").[10] The Amended Inventory listed both savings accounts as jointly owned property passing to the surviving owner upon the Decedent's death. James simultaneously filed a first and final accounting (the "Accounting").[11] The Accounting listed total estate assets of $15,603.06 and total estate expenses of $15,577.04.[12] Put differently, the savings accounts were listed on the Amended Inventory, but were not treated as estate assets because they were survivorship accounts passing to James or Richard upon the Decedent's death.

---

[9] Anna received the Decedent's car in lieu of some of the cash to which she otherwise was entitled.

[10] PX C. James first filed an amended inventory dated January 31, 2012, which did not list the PNC Savings. RX 1. I believe that this error arose because James, or at least his counsel, was not aware of the PNC Savings. References herein to the "Amended Inventory" refer to the May 16, 2012 inventory, which was the last inventory filed for the estate.

[11] PX F.

[12] *Id.*

Notice of the Accounting was sent to all beneficiaries on June 14, 2012.[13] None of the beneficiaries filed exceptions within the three month period indicated on the notice and required by 12 *Del. C.* 2302(d). Shortly after the three month period expired, Karen sent letters to the Register of Wills posing various questions and objections regarding the estate's administration. On October 12, 2012, Karen, Pamela, and Renee filed an action against Richard regarding the PNC Savings (the "PNC Action"). [14]

In the PNC Action, Karen, Pamela, and Renee alleged that the Decedent titled the PNC Savings jointly with Richard with the intent that Richard would distribute those funds to the Decedent's children in accordance with his will. The parties proceeded to take discovery, after which a stipulation of dismissal was filed with, and granted by, the Court.[15] The parties to the PNC Action agreed to dismissal of the claims with prejudice.

James filed this action on September 2, 2014, seeking repayment of the funds paid to respondents from the Citizens Savings and seeking an order requiring the respondents to execute a deed conveying to James their interest in the Property. The respondents answered the complaint and also filed a counterclaim, alleging, in

---

[13] PX N. The estate expenses included funeral expenses, debts of the Decedent, and attorneys' fees.

[14] *DeRamus v. Simmons*, 2014 WL 589376, at *1 (Del. Ch. Feb. 14, 2014) (ORDER).

[15] PX L.

essence, that James had not properly administered the estate because he failed to distribute certain estate assets, including the PNC Savings, the life insurance, the Checking Account, the remaining funds in the Citizens Savings, and the Decedent's personal property. The counterclaims were filed before the respondents stipulated to the dismissal of their claims in the PNC Action.

Trial in this action was held on November 18, 2015. During trial, James testified, along with Richard. The respondents called only one witness, Claudette Thomas, who was a friend of the Decedent. According to Claudette, she attended a gathering with the family in the early 1990s and heard the Decedent state that "Jr." (*i.e.*, James) was the boss and he was supposed to take care of the girls. Claudette never discussed with the Decedent his assets or anything specific about his estate plans.

## ANALYSIS

The parties seek resolution of a number of distinct, but related, issues regarding the administration of the Decedent's estate. James claims that, because the PNC Savings and the Citizens Savings were survivorship accounts, they were not estate assets. For that reason, James takes the position that the debts in the estate almost completely consumed the estate assets and that the Decedent's only remaining assets were the Property and the personal property contained therein, along with a few dollars left in the Checking Account. James therefore contends

that the respondents received well more than they were entitled to in the December 2011 distribution and that the Court should enter judgment in favor of James in the amount of the overpayment. James also contends that the respondents agreed to sell James their share of the Property and were paid for the same, and the Court therefore should order the respondents to execute a deed conveying their interests to James. Finally, James asks the Court to shift his attorneys' fees and costs to the respondents.

The respondents, on the other hand, contend that both the PNC Savings and the Citizens Savings were assets of the estate and should have been distributed to the beneficiaries. The respondents contend that James has not fully distributed the estate assets, and they seek an order of this Court requiring him to do so. As they did in the PNC Action, the respondents maintain that James was named as a joint owner on the Citizens Savings because the Decedent wanted to protect the funds from his daughters' husbands and boyfriends, but the Decedent always intended James to distribute the balance in accordance with the will.

The primary issue to be resolved in this case is the proper treatment of the two savings accounts, because most of the remaining issues are dependent on the Court's determination regarding those accounts. James argues that the respondents are collaterally estopped from disputing the issue of ownership of the PNC Savings, since that issue was resolved by the stipulated dismissal, with prejudice,

of the PNC Action. In other words, James argues that the dismissal with prejudice of the PNC Action bars the respondents from attempting to re-litigate that issue in a subsequent case. I agree. In the PNC Action, the respondents alleged, as they do here, that the PNC Savings was a mere convenience account, established as such by the Decedent to protect the funds from interference by the respondents' husbands or boyfriends. By stipulating to the dismissal of that action with prejudice, the respondents are estopped from raising that issue in this action.[16]

As to the Citizens Savings, the respondents again allege, in essence, that the Decedent intended to create a "convenience account," rather than a true joint tenancy with a right of survivorship.[17] In support of that argument, the respondents point out that the Decedent never indicated James could use the account, and the Decedent's statements suggested that he titled the account jointly to protect the funds from being dissipated by influential people in the respondents' lives. The respondents' argument that this was a convenience account is supported by the

---

[16] "Where a question of fact essential to the judgment is litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action. In such situation, a party is estopped from relitigating the issue again in a subsequent case." *Tyndall v. Tyndall*, 238 A.2d 343, 346 (Del. 1968); *see also, Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 1995) (quoting *Taylor v. State*, 402 A.2d 373, 375 (Del. 1979)).

[17] The respondents did not actually use the term "convenience account," but that is the essence of their argument. Pleadings filed by self-represented litigants are judged by a less stringent standard than those filed by attorneys. *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982); *see also*, *infra* note 22.

record, but that cannot overcome the language in the account agreement that governed the Citizens Savings.

The account agreement unambiguously provided that joint accounts would be treated as survivorship accounts and explained the effect of such treatment.[18] Although a joint tenancy is not favored under Delaware law, if the account agreement or bank form associated with the account unambiguously demonstrates an intent to create a joint tenancy, this Court may not inquire further into extrinsic evidence regarding a depositor's intention in creating the account.[19] In *Walsh v. Bailey*, the Delaware Supreme Court held that an account agreement that both specifically referred to a joint tenancy and explained the consequences that flow from that relationship was unambiguous in its meaning.[20] Absent clear and convincing evidence of mistake on the part of the depositor, the Court may not vary the terms of the agreement by inquiring into extrinsic evidence of the parties' intent.

*Walsh* and its progeny resolve the question of legal title to the funds in the Citizens Savings, but those cases do not bar equitable claims to the funds.[21] Although respondents do not articulate their argument as such, they substantively

---

[18] PX J.

[19] *Walsh v. Bailey*, 197 A.2d 331, 333 (Del. 1964); *see also, Messersmith v. Del. Trust Co.*, 215 A.2d 721, 722-23 (Del. Ch. 1965).

[20] 197 A.2d at 332-33.

[21] *Dillon v. Dillon*, 1987 WL 11282, at *3 (Del. Ch. May 19, 1987) (Allen, C.); *Messersmith*, 215 A.2d at 724.

argue that even if legal title to the funds in the Citizens Savings passed to James, he held those funds in trust to distribute in accordance with the terms of the Decedent's will.[22] This Court has used its equitable powers to impose a resulting trust in similar circumstances, namely where: (1) a depositor created a joint account for purposes of convenience; (2) the depositor subsequently executed a will; and (3) the will would be nearly meaningless if the jointly held property did not constitute part of the estate.[23] That is the case here.

At the time of his death, the Decedent held assets valued at approximately $270,000. The two joint accounts constituted approximately 80 percent of those assets. The Decedent's will reflects an intent to distribute his assets equally among his children. In fact, James' actions in treating the Citizens Savings as an estate asset on the Initial Inventory reflect James' understanding of that intent. If a resulting trust is not imposed on the Citizens Savings, the Decedent would have benefited James in gross disproportion to the other beneficiaries, effectively leaving most of his children a mere token of his total assets. In my view, following

---

[22] Court of Chancery Rule 8 makes clear that a party need not plead a particular theory or "cause of action" in support of a claim. Rather, it is enough that a party plead (1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief sought. Ct. Ch. R. 8(a); *see* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure (Civil) §§ 1216, 1219 (3d ed. 2015). The respondents have done this by alleging that James did not properly distribute the Decedent's assets and that they are entitled to more than James contends was owed to them. This Court's rules also make clear that pleadings shall be construed so as to achieve "substantial justice." Ct. Ch. R. 8(f).

[23] *In re Estate of Waller*, 1993 WL 1500994, at *3 (Del. Ch. May 25, 1993); *Dillon*, 1987 WL 11282, at *3-4.

the precedent established in *Dillon* and *Waller*, James became the trustee of a resulting trust for the Citizens Savings and should be required to distribute those assets to the Decedent's intended beneficiaries.[24]  Although the funds in the Citizens Savings are not estate assets, they are held in a resulting trust for the beneficiaries named in the Decedent's will.

Having resolved the issue of the joint accounts, I next turn to proper distribution of the estate, which addresses both the respondents' counterclaims and James' claim that the respondents should repay a portion of their distribution.  As neither the PNC Savings nor the Citizens Savings were assets of the estate, the Accounting is accurate.  The flip side of that conclusion, however, is that the three month statutory period to challenge an accounting does not bar the respondents' counterclaim regarding the Citizens Savings, because those funds were not estate assets and should not have been reflected on the Accounting.[25]  The remaining estate assets, namely the Checking Account and the car, were consumed by estate debts.  The Property was not an asset of the estate, but rather passed directly to the six children upon the Decedent's death.  Therefore, there was only $26.02 left in

---

[24] Were the issue before me, I likely would reach the same conclusion regarding the PNC Savings, *i.e.,* that Richard was the trustee over a resulting trust for that account.  Because that issue is barred from reconsideration by principles of estoppel, however, and because Richard is not a party to this action, I do not believe this Court can issue any order respecting the PNC Savings.

[25] 12 *Del. C.* § 2302(d) establishes a three month period in which to take exceptions to an estate accounting.

the estate to distribute to the beneficiaries.[26]   As trustee of the resulting trust, however, James also was required to distribute the Citizens Savings funds in accordance with the Decedent's will.   Each of the respondents therefore was entitled to a distribution of $16,865.39, representing a one-sixth share of the Citizens Savings ($16,861.09)[27] and one-sixth of the remaining assets in the estate ($4.30).

James paid each respondent $22,270.83, so the respondents are not entitled to any additional funds and James is entitled to an order requiring the respondents to repay the amount of the overpayment.   James contends that the additional funds were to purchase the respondents' interest in the Property.   If that was the case, however, James did not pay enough, because each respondent was entitled to $6,333.33 for her interest in the Property, totaling $23,198.72.   Because James did not completely pay the respondents for their interest in the Property, I do not believe this Court should enter an order requiring the respondents to execute a deed transferring their interests to James.   Rather, this Court should enter an order requiring each respondent to repay to James $5,405.44.

---

[26] PX F.

[27] James may argue that he used some of the funds in the Citizens Savings to pay the debts of the estate.  That may be true, but not determinative, because there were other assets in the estate, namely the car and the Checking Account, from which the debts could have been satisfied.  By choosing to use the funds in the Citizens Savings to pay estate debts, James effectively purchased for himself the Decedent's car.  That he later transferred title to the car to Anna cannot affect the other beneficiaries' claim to the funds held in the resulting trust.

Under Delaware law, title to the Property passed to the Decedent's six children upon his death. If the parties cannot negotiate a resolution regarding title to the Property, any of the owners are free to file a partition action. If James' judgments against the respondents are not satisfied before partition, any remaining balance could be satisfied from the proceeds of a partition sale.

Two remaining issues require resolution. First, James conceded at trial that the Decedent's personal property remains in the estate and must be distributed to the six beneficiaries named in the will. As the respondents raised that issue in their counterclaim, this Court's order should reflect that the respondents are entitled to a portion of the personal property. Second, James' contention that this Court should shift attorneys' fees to the respondents is baseless. James did not articulate any theory for shifting fees in this case, and I can think of none. I therefore recommend that the Court deny James' claim for attorneys' fees.

## <u>CONCLUSION</u>

For the foregoing reasons, I recommend that the Court enter an order (1) requiring each respondent to repay to James $5,405.44, (2) requiring James to distribute the Decedent's remaining personal property, and (3) denying James' claims regarding title to the Property and attorneys' fees. This is my final report and exceptions may be taken in accordance with Court of Chancery Rule 144.

Sincerely,

/s/ *Abigail M. LeGrow*
Master in Chancery