**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LEONOARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

February 14, 2017

Robert E. Eaton
SBI # 00202059
James T. Vaughn Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Roopa Sabesan, Esquire
Department of Justice
Carvel State Building
820 North French Street
Wilmington, DE 19801

Re: ***Robert E. Eaton v. Robert Coupe, et al.***
***Case No.: N15C-09-245 VLM***

Dear Mr. Eaton and Ms. Sabesan:

This is the Court's ruling on three motions filed in the above-captioned case. The first is Plaintiff Robert E. Eaton ("Plaintiff")'s Motion to Re-Open Case, filed on October 17, 2016. The second is Plaintiff's Motion for Appointment of Counsel, filed on November 7, 2016. The third and final motion is Defendants, Commissioner Robert Coupe, Deputy Warden Philip Parker, James Scarborough, Ron Drake, and Steven Bilbrough[1] ("Defendants")'s Motion to Dismiss the Complaint, filed on December 8, 2015.

For the reasons stated below, Plaintiff's Motion to Re-Open Case is **GRANTED**. Plaintiff's Motion for Appointment of Counsel is **DENIED**. Defendant's Motion to Dismiss is **GRANTED**.

---

[1] Defendant Bilbrough's surname is spelled differently in the record. The Complaint spells his name "Billsborough." However, counsel for Defendant uses "Bilbrough." The Court will use the surname implemented by Defendants' counsel in this Letter Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, an inmate at James T. Vaughn Correctional Center ("Center"), filed a civil action in this Court on September 29, 2015.[2] The Complaint alleges Defendants, Department of Correction ("DOC") officers and supervisors, retaliated against Plaintiff when he reported what is alleged to be an "unconstitutional and unhumane [sic]" practice at the Center: "making food trays out of left-over scraps of previously served meals, and fooding [sic] it to inmates when there is not enough trays sent to feed, instead of ordering from the kitchen."[3] He asserts claims arising under the Delaware Whistleblowers' Protection Act, 19 *Del. C.* §§ 1701-08, and 42 U.S.C. § 1983. The § 1983 claims arise under the First and Fourteenth Amendments: retaliatory firing under the former and procedural due process under the latter. The claims are leveled at Defendants in both their individual and official capacity as employees/officers of DOC.[4]

The Complaint alleges that Plaintiff was removed from his employment in the Center's canteen after disclosing this allegedly unconstitutional practice in a letter to Deputy Warden Parker.[5] After his termination of employment, he allegedly wrote to "the other named Defendants . . . requesting an investigation into the practice and reinstatement of his employment in light of [] Defendant Bilbrough not complying with institutional due process procedures layed [sic] out for the suspension or firing of any inmate from employment."[6] The Complaint claims that this "policy"—presumably the alleged retaliatory firing of inmate-employees who report certain institutional practices—is "longstanding and continuous. . . ."[7]

---

[2] The Complaint was filed conventionally on that date and docketed online on the following day. *See* D.I. #57940502 [hereinafter Complaint].

[3] Complaint at 2.

[4] *Id.* at 1-2.

[5] *Id.* at 2.

[6] *Id.*

[7] *Id.* at 3.

2

The Complaint seeks monetary and injunctive relief for the "past and continual violation of the First Amendment and employment protection under Delaware's Whistleblowers' Protection Act, and lost wages/with interest."[8]

Defendants filed a Motion to Dismiss the Complaint on the basis of a failure to state a claim upon which relief can be granted on December 8, 2015. Plaintiff responded on February 2, 2016. While a decision on the Motion was pending, the Prothonotary received a handwritten letter, dated April 5, 2016, stating: "I would like to dismiss voluntarily the above-captioned civil action."[9] The letter is signed by "Robert Eaton." The docket was noted accordingly and the case was closed.

On August 22, 2016, Plaintiff sent a letter to the Prothonotary requesting a status on the Motion to Dismiss.[10] The Prothonotary instructed Plaintiff that he had dismissed his case and no decision was pending. Plaintiff responded, stating that he did not file the purported notice of voluntary dismissal and "request[ed] a full investigation and prosecution of the person(s) who . . . falsely mislead this Court into dismissing this civil action."[11] The Prothonotary instructed Plaintiff to file a motion should he wish to re-open his case, which he did on October 12, 2016.[12] The Motion to Re-Open Case contains a notarized affidavit from Plaintiff claiming the voluntary dismissal was "fraudulent" and again instructing the Court to investigate the matter.

While awaiting a response from Defendants to the Motion to Re-Open Case, Plaintiff filed a Motion for Appointment of Counsel in which he requests counsel be appointed in this matter on several bases outlined more fully below.[13]

After Defendants' response to the Motion to Re-Open Case, Plaintiff filed a reply of sorts, claiming that the notice of voluntary dismissal was orchestrated by a

---

[8] *Id.*

[9] D.I. #58880543 (docketed Apr. 18, 2016).

[10] D.I. #59577002 (docketed Sep. 19, 2016).

[11] D.I. #59702854 (docketed Oct. 14, 2016).

[12] D.I. #59727373 (docketed Oct. 17, 2016).

[13] D.I. #59901847 (filed Nov. 7, 2016; docketed Dec. 2, 2016).

3

"jailhouse lawyer" that originally helped him prepare his Complaint.[14] He also claims that he did not receive notice of the dismissal until the Prothonotary answered his letter seeking a status on the Motion to Dismiss.

Having considered the filings and record in this case, the Court will now address the three pending Motions. The Court will address, first, Plaintiff's Motion to Re-Open Case. Then, the Court will decide Plaintiff's Motion for Appointment of Counsel, concluding with Defendants' Motion to Dismiss.

## DISCUSSION

### I. Plaintiff's Motion to Re-Open Case

#### A. Standard of Review

Delaware Superior Court Civil Rule 41(a)(1) permits the plaintiff to voluntarily dismiss the "action" in most civil cases by filing a notice of dismissal "at any time before service by the adverse party of an answer or of a motion for summary judgment."[15] To be effective, the notice must voluntarily dismiss all pending claims against a particular party.[16]

#### B. Analysis

While it is clear that Plaintiff could have dismissed his case in the manner he purportedly did in this case, there is a notable caveat: Plaintiff claims that he never voluntarily dismissed the case and that any such filing was fraudulent.

In response, Defendants argue that the writing style in the notice of voluntary dismissal resembles Plaintiff's handwriting in all other filings with this Court. While conceding that they have not engaged a handwriting expert to analyze the notice of dismissal, Defendants implore the Court to compare the notice with the style seen in the other submissions.

---

[14] D.I. #59970836 (filed Dec. 9, 2016; docketed Dec. 19, 2016).

[15] DEL. SUPER. CT. CIV. R. 41(a)(1).

[16] *See AT&T Wireless Servs., Inc. v. Fed. Ins. Co.*, 2005 WL 2155695, at *2 (Del. Super. Aug. 18, 2005) (citing 8 JAMES W. MOORE, et al., MOORE'S FEDERAL PRACTICE § 41.21[1]).

4

The Court has at its disposition presumably multiple exemplars of Plaintiff's handwriting because all of his filings and correspondence with the Court is handwritten. From a review of the notice, the handwriting appears similar to Plaintiff's rather distinctive calligraphy. However, there are noticeable differences from the style of handwriting in the Complaint and notice when compared to the letters from Plaintiff following dismissal. For example, the Complaint and notice are signed "Robert Eaton." The letters and motions from Plaintiff following the dismissal are all signed either "Robert *E.* Eaton" or "Robert *Edward* Eaton."

That is to say that there is some doubt as to whether Plaintiff actually filed the voluntarily dismissal. Weighing against Defendants' argument, moreover, is Plaintiff's rather diligent reaction to his discovery that his claim had been dismissed. This diligence manifests Plaintiff's desire to litigate his claims against Defendants. While the Court cannot conclude whether the notice was actually filed by Plaintiff, the Court will exercise its discretion, in accordance with Delaware's policy of providing litigants their "day in court,"[17] to grant Plaintiff's Motion to Re-Open Case.

## II.    Plaintiff's Motion for Appointment of Counsel

### A.    Standard of Review

The Sixth Amendment of the United States Constitution, as incorporated under the Fourteenth Amendment, requires the States provide indigent criminal defendants with assistance of counsel at "every step in the proceedings against him."[18] Article I, Section 7 of the Delaware Constitution further provides assistance of counsel for indigent criminal defendants during all critical stages of the proceedings against him.[19]

---

[17] DEL. CONST. art. I, § 9 ("All courts shall be open; and every person for an injury done him or her in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense.").

[18] *Gideon v. Wainwright*, 372 U.S. 335, 345 (1963) (quoting *Powell v. Alabama*, 287 U.S. 45, 68-69 (1932)). *See* U.S. CONT. amend. VI.

[19] DEL. CONST. art. I, § 7; *Potter v. State*, 547 A.2d 595, 600 (Del. 1988) (citing *Gideon*, 372 U.S. at 342-45). *See also Bryan v. State*, 571 A.2d 170, 175 (Del. 1990).

The right to appointed counsel, if any, in a civil case does not arise under the Sixth Amendment.[20] Instead, any such right must arise under the Due Process Clause of the Fourteenth Amendment.[21] "When an indigent civil litigant could not possibly be deprived of his personal liberty as a direct result of the litigation, the Constitution does not require, in the absence of special and compelling circumstances, the appointment of counsel."[22] A special or compelling circumstance exists where the plaintiff's interest in appointed counsel outweighs the other *Mathews v. Eldridge* procedural due process factors: the government's interest and the risk that the absence of counsel will result in erroneous results.[23]

## B.  Analysis

Plaintiff's proffer for appointment of counsel rests on the following bases: (1) he is indigent; (2) he is "learning impaired;" (3) "sabotage has been injected into the plaintiff's complaint thus causing more difficult and complex problems for the case proceedings;" (4) the supposed existence of a "conflict of interest" between Defendants' counsel and Plaintiff's demands for an investigation into whomever fabricated the notice of dismissal; (5) an allegation that Defendants continue to retaliate against him (noting that "new evidence will be introduced"); and (6) "hostile witnesses . . . need to be brought before the Court to testify of their involvement."

This Court has addressed nearly identical motions for appointment of counsel in civil cases where the requesting litigants are indigent inmates. For example, in *Vick v. Department of Correction*, the plaintiff-inmate sued DOC employees under the First, Eighth, and Fourteenth Amendments, alleging the employees forcibly removed his ring and fez, which were articles of religious significance to the inmate.[24] The inmate alleged that: (1) he was indigent; (2) the case was complex; (3) he lacked the requisite legal knowledge to properly

---

[20] *Jenkins v. Dover Police Comm'r*, 2002 WL 663912, at *2 (Del. Super. Apr. 5, 2002).

[21] *Id. See* U.S. CONST. amend. XIV, § 1.

[22] *Jenkins*, 2002 WL 663912, at *2 (quoting William L. Dick, Jr., Note, *The Right to Appointed Counsel for Indigent Civil Litigants: The Demands of Due Process*, 30 WM. & MARY L. REV. 627, 628 (1989)).

[23] *See id.* (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

[24] 1986 WL 8003, at *1 (Del. Super. Apr. 14, 1986).

6

represent himself; and (4) he had very limited access to the prison library.[25] The Court framed the issue as whether the inmate had "meaningful access" to the courts.[26] The Court held that the inmate's filings with the Court belied his claims that the case was complex or that he had no meaningful access to the prison library to prosecute his claim.[27]

In *Jenkins v. Dover Police Commissioner* the Court denied the indigent inmate's request for appointment of counsel applying procedural due process precedent.[28] The Court applied a presumption "against requiring appointed counsel when [the] unsuccessful litigant cannot be deprived of his personal liberty," derived from the U.S. Supreme Court's opinion in *Lassiter v. Department of Social Services*.[29] The *Jenkins* Court held that this presumption, coupled with the government's interest "in maintaining order and discipline in its penal institutions" outweighed the litigant's interest in having appointed counsel where the case was not complex and the litigant had access to the prison library.[30]

Applying *Lassiter*, *Vick*, and *Jenkins* to the present case, the outcome is the same: Plaintiff has failed to show why this "presumption" against appointment of counsel in a civil case is overcome. As in *Vick* and *Jenkins*, the Court finds that all six bases alleged in the Motion are unpersuasive. First, Plaintiff's indigence, by itself, is not enough to state a right to appointed counsel. Second, this case is no more complex than the claims in *Vick* and *Jenkins*. Third, his ability to cite cases relevant to his contentions belies his asserted lack of legal knowledge or mental capacity to prosecute his case. Finally, his remaining contention—that there is a clandestine operation to subvert his civil claim—is unsupported by any evidence.

---

[25] *See id.*

[26] *Id.* (citing *Bounds v. Smith*, 430 U.S. 817 (1977); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Boulware v. Battaglia*, 344 F.Supp. 889 (D. Del. 1972); *Johnson v. State*, 442 A.2d 1362 (Del. 1982); *Hall v. State*, 408 A.2d 287 (Del. 1979)).

[27] *See id.* at *3.

[28] 2002 WL 663912 (Del. Super. Apr. 5, 2002).

[29] *Id.* at *2-3 (quoting William L. Dick, Jr., Note, *The Right to Appointed Counsel for Indigent Civil Litigants: The Demands of Due Process*, 30 WM. & MARY L. REV. 627, 628 (1989)) (citing *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18 (1981)).

[30] *Id.*

Therefore, Plaintiff's Motion for Appointment of Counsel is **DENIED**.

## III. Defendants' Motion to Dismiss

### A. Standard of Review

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[31] Even vague allegations are considered well-pleaded if they give the opposing party notice of a claim.[32] The Court must draw all reasonable inferences in favor of the non-moving party; however, it will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of the non-moving party."[33] Dismissal of a complaint under Rule 12(b)(6) must be denied if the non-moving party could recover under "any reasonably conceivable set of circumstances susceptible of proof under the complaint."[34]

### B. Analysis

Plaintiff's claims mix two distinct grounds for relief. Plaintiff's first claim arises under the Delaware Whistleblowers' Protection Act ("state law claim"). The second claim is a civil rights claim under 42 U.S.C. § 1983, alleging both a First Amendment retaliatory firing claim and a Fourteenth Amendment due process claim for the deprivation of a protected liberty or property interest ("federal claims"). This Court will address both claims separately.

#### i. Plaintiff's State Law Claim

The Delaware Whistleblowers' Protection Act ("Act") protects "employees who report violations of law for the benefit of the public."[35] Section 1703 of the

---

[31] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978). *See also* DEL. SUPER. CT. CIV. R. 12(b)(6).

[32] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

[33] *Id.*; *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (internal citation omitted).

[34] *Spence*, 396 A.2d at 968 (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952)).

[35] *Smith v. Delaware State Univ.*, 47 A.3d 472, 476 (Del. 2012).

Act states: "An *employer* shall not discharge, threaten, or otherwise discriminate against an *employee* regarding the employee's compensation, terms, conditions, location, or privileges of employment. . . ."[36] The term "employee" is defined as "a person employed full or part-time by any employer. . . ."[37] An "employer" is defined broadly and includes situations where "services are performed for wages under any contract of hire, written or oral, express or implied."[38] The *sine qua non* of the Act, therefore, is the existence of an employer-employee relationship prior to the alleged retaliatory action.[39]

Plaintiff's state law claim fails because he is not an employee of DOC. In a related context, the Supreme Court held in *Walls v. Department of Correction* that inmates are not "employees" within the meaning of Delaware's minimum wage statute.[40] In reaching this holding, the *Walls* Court quoted a Fourth Circuit opinion explaining the rationale behind the absence of the employer-employee relationship in the penal context:

> Inmates may voluntarily apply for [prison industries] positions, but they certainly are not free to walk off the job site and look for other work. When a shift ends, inmates do not leave [prison] supervision, but rather proceed to the next part of their regimented day. [The prison industries] and [the prisoner] do not enjoy the employer-employee relationship contemplated in the Federal Labor Standards Act ["FLSA"], but instead have a custodial relationship to which the [FLSA's] mandates do not apply.[41]

---

[36] 19 *Del. C.* § 1703(a) (2013 & Supp. 2016) (emphasis added).

[37] § 1702(1).

[38] § 1702(2).

[39] *See, e.g.*, *Curlett v. Madison Indus. Servs. Team, Ltd.*, 863 F.Supp.2d 357 (D. Del. 2012) (discussing legislative history of Act and holding that Act does not apply to employees employed outside Delaware).

[40] 663 A.2d 488, 1995 WL 420801, at *2 (Del. 1995) (TABLE).

[41] *Id.* (quoting *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993)).

9

Since inmates lack the voluntariness inherent in the employer-employee relationship, the *Walls* Court held that inmates were not able to claim minimum wage from the DOC.[42] The *Walls* holding is codified in the minimum wage statute.[43]

Plaintiff's state law claim fails for another reason: an employee under the Act cannot sue individuals occupying merely a supervisory role.[44] Instead, the Act permits the employee to sue the "employer," *i.e.*, that entity who supplies wages for services performed, in an action under § 1703. Defendants are alleged to have acted in their individual and official capacities, but the action is not against the putative "employer," as required under the Act. Therefore, Plaintiff's state law claim fails to meet Delaware's "reasonable conceivability" standard and must be dismissed for failure to state a claim upon which relief can be granted.

### ii. Plaintiff's Federal Claims

Plaintiff alleges two federal claims: one for a violation of his First Amendment rights, and another for a violation of due process under the Fourteenth Amendment. Plaintiff alleges his federal claims through the federal civil rights statute, 42 U.S.C. § 1983. Section 1983 reads in part:

> Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights*, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at

---

[42] *See id. See also id.* at *1 (quoting *Vanskike v. Peters,* 974 F.2d 806, 809 (7th Cir. 1992)) ("Put simply, the [prison's] 'control' over [the prisoner] does not stem from any remunerative relationship or bargained-for exchange of labor for consideration, but from incarceration itself. The control that the [prison] exercises over a prisoner is nearly total, and control over his work is merely incidental to that general control.").

[43] 19 *Del. C.* § 901(3)(h) (2013 & Supp. 2016) (excluding "any inmate in the custody of DOC"). *Cf.* 11 *Del. C.* § 6532 (2015 & Supp. 2016) ("The [DOC] may establish compulsory programs of employment, work experience and training for all physically able inmates.").

[44] *Meltzer v. City of Wilmington,* 2008 WL 4899230, at *2 (Del. Super. Aug. 6, 2008); *Tomei v. Sharp,* 902 A.2d 757, 767 (Del. Super. 2006) *aff'd,* 918 A.2d 1171, 2007 WL 249176 (Del. 2007) (TABLE).

law, suit in equity, or other proper proceeding for redress.[45]
. . .

Since Plaintiff's federal claims derive from two distinct constitutional fonts, the Court will address each claim separately.[46]

### (a) First Amendment Retaliation Claim

The Petition Clause and Free Speech Clause of the First Amendment "protect 'personal expression'—both expression generally and expression directed towards the government for the specific purpose of asking it to right a wrong."[47] In the prison context, "[a] prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."[48] Though certain constitutional protections dissipate at the jailhouse doors, it is well established that inmates shed only those First Amendment rights that are incompatible with the "legitimate penological objectives of the corrections system."[49] For instance, an inmate retains his rights under the Petition Clause where he reports religious harassment in the prison to prison officials.[50]

---

[45] 42 U.S.C. § 1983 (2016) (emphasis added).

[46] Plaintiff's claims against Defendants arising out of their *official* capacity are barred under the doctrine of sovereign immunity and the Eleventh Amendment. *See* U.S. CONT. amend XI. *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Hall v. McGuigan*, 743 A.2d 1197, 1206 (Del. Super. 1999). The State is not a "person" within the meaning of § 1983. *See Will*, 491 U.S. at 71; *Ringer v. Smith*, 1994 WL 750319, at *2 (Del. Super. Nov. 23, 1994), *aff'd*, 655 A.2d 308, 1995 WL 67093 (Del. 1995) (TABLE). An action against an individual in that individual's official capacity is treated as an action against the "government entity employing the official." *Hall*, 743 A.2d at 1206. Therefore, in so far as Plaintiff's claims are against Defendants in their official capacity, those claims are barred by sovereign immunity.

[47] *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297-98 (3d Cir. 2016) (citing *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011)).

[48] *Id.* at 297 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

[49] *Id.* at 298 (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

[50] *See id.* at 299.

11

Plaintiff has shown that he engaged in constitutionally protected activity. He alleges that he wrote to Defendants revealing the Center's practice of reusing old food scraps to feed inmates. When an inmate files a grievance with prison officials, whether oral or written, he engages in constitutionally protected speech.[51] Plaintiff's letter reporting what he alleged to be unconstitutional conduct of the Center's officials is protected free speech under the Petition Clause.

The second element Plaintiff must show is "an adverse action taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights." "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'"[52] Where an inmate is subject to a range of sanctions, such as changes in housing, confinement, or classification, this *de minimis* standard is met.[53] The issue in this Motion is whether the removal of Plaintiff from a discretionary employment position is akin to this "range of sanctions." Since the resolution of this issue is unclear, Defendants fail to meet their burden of proving that the second element is not susceptible to any reasonably conceivable set of circumstances.

The third element is where Plaintiff's *prima facie* showing fails: he has not demonstrated "a causal link between the exercise of his constitutional rights and the adverse action taken against him." The only allegations of misconduct are Plaintiff's removal from a discretionary work position after writing a letter to Defendant Parker. The only date provided in the Complaint is July 5, 2014. The remainder of the Complaint asserts conclusory allegations without sufficient facts to suggest a causal connection between his grievance and his termination.

Instead, Plaintiff alleges allegations sounding in *respondeat superior* liability. This is inapposite as *Monell v. Department of Social Services of New York* and its progeny make clear that § 1983 may not be premised on *respondeat superior* liability for alleged violations of the Constitution.[54] Rather, Plaintiff must

---

[51] *See id. See also Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016) (inmate grievance against corrections officers who allegedly retaliated against him for filing grievance engaged in constitutionally protected free speech).

[52] *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).

[53] *See id.*

[54] 436 U.S. 658, 692 (1978) ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").

12

plead facts sufficient to show a reasonably conceivable set of circumstances that each "named defendant 'played an affirmative role in the deprivation of plaintiff's rights' through personal involvement or actual knowledge."[55]

There are five named Defendants in this case. Two are officials in supervisory capacities at the Center: Commissioner Coupe and Deputy Warden Parker. The other three are DOC officers at the Center.

This Court finds that the Complaint wholly fails to state facts sufficient for the Court to infer that each Defendant acted "affirmatively" to violate Plaintiff's First Amendment rights. The only allegations of any conduct whatsoever are that Defendants received letters from Plaintiff about his reporting of the meal issue and he was—at some unknown point in time—terminated from employment at the Canteen. This falls far below even the minimal level of proof needed under Delaware's "reasonable conceivability" standard on a motion to dismiss. Therefore, Plaintiff's First Amendment claim must be dismissed pursuant to Rule 12(b)(6).

### (b)    Procedural Due Process Claim

The Due Process Clause performs a dual function. Procedurally, due process guarantees a fair procedure "in connection with any deprivation of life, liberty, or property by the State."[56] Substantively, due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'"[57] Plaintiff appears to allege a procedural due process claim for his termination from employment at the Center's canteen.

"For plaintiff to state a cognizable claim that he was deprived of . . . employment opportunities without due process of law, plaintiff must have a property or liberty interest."[58] However, under Third Circuit and Delaware precedent, inmates do not have an entitlement to a specific job, "or even to any

---

[55] *Eilliot v. Danberg*, 2013 WL 6407676, at *2 (Del. Super. Dec. 6, 2013) (internal footnote omitted) (quoting *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981); *Estate of Williams v. Corr. Med. Servs., Inc.*, 2010 WL 2991589, at *3 (Del. Super. July 23, 2010)).

[56] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).

[57] *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

[58] *Abdul-Akbar v. Dep't of Corr.*, 910 F.Supp. 986, 1002 (D. Del. 1995) (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989)).

13

job."[59] Therefore, Plaintiff fails to state a constitutionally protected interest in his continued employment in the Center's canteen. This failure to identify a constitutional interest means that there are no reasonably conceivable set of circumstances that would permit Plaintiff to recover under the Due Process Clause for his removal from his employment at the Center. Hence, his due process claim must be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Re-Open the Case is **GRANTED**. Plaintiff's Motion for Appointment of Counsel is **DENIED**. Defendants' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

Vivian L. Medinilla
Judge

oc:   Prothonotary

---

[59] *Kantamanto v. King*, 651 F.Supp.2d 313, 330 (E.D. Pa. 2009) (quoting *Quinlan*, 866 F.2d at 630). *See also Abdul-Akbar v. Dep't of Correction*, 910 F.Supp. 986, 1002 (D. Del. 1995) (holding plaintiff does not have either property or liberty interest in prison employment as it is discretionary opportunity); *Dutton v. Risley*, 659 A.2d 227, 1994 WL 658488, at *1 (Del. 1994) (TABLE).