**Lester M. JOHNSON, Defendant, Appellant,**

v.

**STATE of Delaware, Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted Dec. 17, 1981.

Decided March 2, 1982.

Lester M. Johnson, defendant, appellant, Marion, Illinois, pro se.

John J. Polk, Deputy Atty. Gen., Wilmington, for plaintiff, appellee.

Before HERRMANN, C. J., DUFFY and HORSEY, JJ.

DUFFY, Justice.

In this proceeding, Lester M. Johnson (appellant), a Delaware prisoner who has been transferred to a Federal prison outside this State, appeals a dismissal by the Superior Court of his petition for a writ of mandamus, 10 *Del.C.* § 564, to compel the State to provide him with Delaware legal reference materials and with mailing privileges equal to those available to prisoners housed in Delaware.

I

In the Superior Court Johnson was convicted of and sentenced for Murder in the First Degree, 11 *Del.C.* § 636. See *Johnson v. State,* Del.Supr., 312 A.2d 630 (1973). After serving a part of his sentence at the Delaware Correctional Center, he was transferred to the Federal correctional system pursuant to an agreement between the State and the Federal Government. Since the transfer, he has been incarcerated at several Federal penitentiaries.

II

In this action, Johnson contends that incarceration out of Delaware has denied him access to Delaware statutory materials, court rules and reported opinions that are available to prisoners incarcerated here. In addition, he says that his efforts to pursue remedies in the Delaware Courts are further burdened by a United States Bureau of Prisons Regulation which provides indigent Federal prisoners with only five free first-class mailing stamps per month.

Defendant argued in the Superior Court that the failure to provide Delaware legal materials and the limitation of mailing privileges violated both his constitutional right to meaningful access to the courts and the provisions of the Interstate Corrections Compact, 11 *Del.C.* § 6571, Art. IV(e), which provides in part:

"The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have if confined in an appropriate institution of the sending state."

The State's only response to Johnson's petition was a letter from the Department of Justice stating that he had been transferred to a Federal prison, not a state prison, and so was not transferred under the Interstate Corrections Compact. The State contended that the Compact is not relevant because the Federal Government is not a party to it. The State did not respond to Johnson's arguments concerning denial of meaningful access to the courts.

On that showing, the Superior Court ruled as follows:

"For the reasons given in [the letter of the Department of Justice] dated September 2, 1980, it is ORDERED that the defendant's petition for a writ of mandamus is DISMISSED."

Johnson then docketed this appeal in which he renews his argument for meaningful access to the Delaware Courts and also contends that his rights under the agree-

ment between the State of Delaware and the Federal Government have been violated.

Basically, the State contends that the manner in which it fulfills the constitutional obligation to provide Johnson with meaningful access to the courts is discretionary and that the Superior Court did not abuse its discretion in dismissing the petition for a writ of mandamus. In addition, the State argues that since Johnson did not contest the agreement between the State and the Federal Government pursuant to which he had been transferred, and raised instead the Interstate Compact which is not applicable, this Court should not consider his arguments about alleged violations of the agreement.

### III

Before considering the merits of the appeal, we have several preliminary comments about the form of action and Johnson's pleadings.

■ First, we adopt the view that a *pro se* pleading is judged by a "less stringent standard" than a pleading or document filed by an attorney. *Bounds v. Smith*, 430 U.S. 817, 826, 97 S.Ct. 1491, 1497, 52 L.Ed.2d 72 (1977). Thus, although a petition for a writ of mandamus may not (arguably, at least) have been the appropriate procedure, compare *Remedio v. City of Newark*, Del.Supr., 337 A.2d 317 (1975), by which to raise the alleged violations of Johnson's rights, we will consider the petition as a technically proper request by him for an order upon State officials to provide him with legal materials and mailing privileges equivalent to those available to prisoners housed in Delaware.

■ Second, it appears to be undisputed in this Court that Johnson was not transferred to Federal authorities under the Interstate Corrections Compact. For that reason, we regard any issue arising under the Compact as moot.

In his petition, however, Johnson sought to compel the State

"to comply with ANY AND ALL CONTRACTS, either separate from 11 Del.C. § 6571 (INTERSTATE CORRECTIONS COMPACT) ARTICLE III (CONTRACTS), or other wise; particularly contracts where it is believed have called for the Agreement in paragraphs which offers to petitioner, obligations by Respondents to: ......... 'undertake the custody, care, treatment, including the furnishings of subsistence.' .... through Respondents agents or contractors (The U. S. Bureau of Prison, Director and Attorney General of The U.S.A.)."

Fairly read, that pleading is broad enough to put in issue a violation of the agreement under which Johnson was transferred to the Federal authorities as an alleged basis for relief.

### IV

■ Although not expressly stated in the Federal Constitution, and over vigorous dissent as to certain aspects, cf. *Bounds v. Smith*, supra, the Supreme Court of the United States has, in recent decades, recognized that a prison inmate has a constitutional right to "meaningful access" to the courts based upon principles of equal protection and due process of law. That concept has evolved from cases which focused on state practices and procedures that effectively denied to a prisoner the right to pursue a criminal appeal and/or to a petition for a writ of habeas corpus. *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *Cochran v. Kansas*, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942).

In one of the first major rulings on this subject, the Supreme Court held that a State must furnish a trial transcript, or a reasonable alternative to a transcript, to an indigent defendant free of charge if State law makes a transcript essential for full direct appellate review. *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). After *Griffin*, the Supreme Court ruled that a criminal appeal to the Ohio Supreme Court, even if discretionary in nature, could not be made contingent upon payment of a filing fee, which would preclude an appeal by an indigent. *Burns v.*

*Ohio,* 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959). The ruling in *Burns* was subsequently extended to a habeas corpus proceeding although, technically, it is classified as a civil action. *Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). Eventually, the scope of the constitutional right of meaningful access was held to include a prisoner's civil rights action as well as a criminal appeal and a habeas corpus proceeding. See *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

In this context, meaningful access to the courts involves either access to an adequate law library or legal assistance in the preparation of complaints, appeals, petitions, writs and other legal documents. In the seminal case of *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), a state prisoner filed a motion in the District Court of the United States for "law books and a typewriter." 89 *S.Ct.* at 748. The Court focused on a prison regulation which provided in part that, "[n]o inmate will advise, assist or otherwise contract to aid another either with or without a fee, to prepare Writs or other legal matters." 89 *S.Ct.* at 748. After discussing the historical significance of the writ of habeas corpus, the Court stated, "it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." 89 *S.Ct.* at 749. Recognizing that "[j]ails and penitentiaries include among their inmates a high percentage of persons who are totally or functionally illiterate, whose educational attainments are slight, and whose intelligence is limited," 89 *S.Ct.* at 750, the Court held that although a prisoner is not constitutionally entitled to an attorney in the preparation of all legal complaints and legal documents while he is incarcerated, state officials must allow inmates to assist other inmates in the preparation of such legal documents, or they must provide some "reasonable alternative" to legal assistance by other inmates. 89 *S.Ct.* at 751. Although the Court expressed "no judgment concerning these plans," it discussed alternatives to inmate assistance employed in several states, including public defenders programs, voluntary bar association assistance and programs involving senior law students. 89 *S.Ct.* at 751. Similarly, the Court has held that the right to legal assistance is applicable to the preparation of complaints in civil rights cases. *Wolff v. McDonnell,* 94 *S.Ct.* at 2986.

The right of meaningful access to the courts was eventually applied to a request by an inmate for legal reference materials. In a brief *per curiam* opinion, the Supreme Court affirmed an opinion of the District Court of the United States for the Northern District of California which held that an inmate has an affirmative right of access to legal reference materials or alternative sources of legal knowledge. *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) *affirming, Gilmore v. Lynch,* N.D.Cal., 319 F.Supp. 105 (1970). A prison regulation which listed an "exclusive list" of books for California prison law libraries and a California State Law Library procedure that restricted circulation of law books to prisoners was reviewed by the District Court. The constitutional right of meaningful access to the courts was there described by the District Court as follows:

"The rights invoked by plaintiffs herein have been given considerable emphasis by past and present case law. Reasonable access to the courts is a constitutional imperative which has been held to prevail against a variety of state interests. Similarly, the right under the equal protection clause of the indigent and uneducated prisoner to the tools necessary to receive adequate hearing in the courts has received special reenforcement by the federal courts in recent decades. . . .

\*     \*     \*     \*     \*     \*

The State answers that the needs of a criminal lawyer are not comparable to those of an inmate, since no legal expertise is required of a prisoner asking for judicial relief. All the convicted felon need do is file a brief statement of the facts of his case. If these facts state a colorable ground for relief, an attorney

will be appointed to argue the case. There is no need, it is claimed, for legal arguments or citations in a collateral attack upon a judgment of conviction. . . .

The wording of the statute and the wishes of the scholars notwithstanding, this Court takes notice that more than simple 'facts' are needed in order to file an adequate petition for relief by way of habeas corpus. A prisoner should know the rules concerning venue, jurisdiction, exhaustion of remedies, and proper parties respondent. He should know *which* facts are legally significant, and merit presentation to the Court, and which are irrelevant or confusing.

\* \* \* \* \* \*

'Access to the courts,' then, is a larger concept than that put forward by the State. It encompasses all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him. In some contexts this has been interpreted to require court-appointed counsel for indigents. . . . In other situations, the State might be obligated to provide free transcripts, process-serving facilities, and *in forma pauperis* filing privileges. Indigents asking for habeas corpus relief are not invariably entitled to court-appointed counsel . . ., but *Johnson v. Avery, supra,* note 1, makes it clear that some provision must be made to ensure that prisoners have the assistance necessary to file petitions and complaints which will in fact be fully considered by the courts."

319 *F.Supp.* at 109, 110 (emphasis in original).

In *Bounds v. Smith,* supra, the Supreme Court reaffirmed the result reached in *Younger v. Gilmore,* holding that a state has an affirmative duty to provide its prisoners with meaningful access to the courts by providing access to adequate law libraries or providing reasonable alternatives in the form of legal assistance. The respondents in *Bounds* were inmates who contended that they had been denied access to the courts, in violation of their Fourteenth

Amendment right, because the State of North Carolina did not provide adequate legal research facilities. The Supreme Court emphasized the importance of access to adequate law libraries or other forms of legal assistance to the incarcerated persons before and after a suit is filed; thus:

"This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial. Thus, neither the availability of jailhouse lawyers nor the necessity for affirmative state action is dispositive of respondents' claims. The inquiry is rather whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.

Although it is essentially true, as petitioners argue, that a habeas corpus petition or civil rights complaint need only set forth facts giving rise to the cause of action, but see, Fed.Rules Civ.Proc. 8(a)(1), (3), it hardly follows that a law library or other legal assistance is not essential to frame such documents. It would verge on incompetence for a lawyer to file an initial pleading without researching such issues as jurisdiction, venue, standing, exhaustion of remedies, proper parties plaintiff and defendant, and types of relief available. Most importantly, of course, a lawyer must know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action.

If a lawyer must perform such preliminary research, it is no less vital for a *pro se* prisoner. Indeed, despite the 'less stringent standards' by which a *pro se* pleading is judged, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), it is often more important that a prisoner complaint set forth a nonfrivolous claim meeting all procedural prerequisites, since the court may pass on the

complaint's sufficiency before allowing filing *in forma pauperis* and may dismiss the case if it is deemed frivolous. See 28 U.S.C. § 1915. Moreover, if the State files a response to a *pro se* pleading, it will undoubtedly contain seemingly authoritative citations. Without a library, an inmate will be unable to rebut the State's argument. It is not enough to answer that the court will evaluate the facts pleaded in light of the relevant law. Even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation. Cf. *Gardner v. California*, 393 U.S. 367, at 369–370, 89 S.Ct. 580, 582, 21 L.Ed.2d 601 (1969)."

97 *S.Ct.* at 1496, 1497.

■ Meaningful access to the courts, however, does not mandate inmate access to an adequate law library. Indeed, in *Bounds* and *Younger*, the Federal Courts have specifically stated that a state may explore other alternatives as long as the inmate has meaningful access to legal knowledge, whether it be in the form of access to legal reference materials or the assistance of persons trained in the law. Some alternatives that have been suggested by the Supreme Court are as follows:

> "[T]he training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part-time consultant basis, and the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of public defenders or legal services offices."

97 *S.Ct.* at 1499, 1500.

It is against that mosaic of relevant, decisional law that we must now examine the issues submitted in this case.

## V

■ The principal issue before us is relatively narrow, that is, it concerns the right of a Delaware prisoner housed out of State to access to Delaware legal materials. To put that issue in context, we have reviewed the law as it has been applied to prison inmates generally and when the focus was probably on access to Federal legal reference materials. But access to Delaware materials would seem to follow, *a fortiori*, from the Federal law which has evolved.*

We are unable to find any basis in principle or logic for distinguishing between access by a Delaware prisoner to Federal legal materials and access to Delaware legal materials. Obviously, each may offer procedural and substantive rights which a prisoner has a right to assert. Indeed, in a concurring opinion in *Bounds v. Smith*, supra, Justice Powell specifically viewed the Court's decision as recognizing "that a prison inmate has a constitutional right of access to the courts to assert such procedural and substantive rights as may be available to him under *state* and federal law." (Emphasis added.) 97 *S.Ct.* at 1500. Given that view, we hold that Johnson is entitled to reasonable access to Delaware legal reference materials or to a reasonable alternative thereto.

We turn now to the second leg on which this case stands, namely, the way in which the State may meet its duty to a prisoner it has arranged to incarcerate out of Delaware.

We recognize that the Delaware authorities charged with the responsibility for custody of prisoners may have many valid reasons for transferring an inmate to a Federal prison or to a prison in another State; overcrowding, protection of a transferred prisoner, protection of other inmates, or other institutional or security reasons are but illustrations of the need for flexibility. But a legitimate and reasonable basis for transferring an inmate does not justify the denial to him of an opportunity to exercise a constitutional right.

As we have said, Johnson argues that, as a Delaware prisoner incarcerated elsewhere

---

* We note that the plan submitted by North Carolina in *Bounds v. Smith* included libraries with North Carolina Statutes and Reports as well as Federal Statutes and Case Reports.

in a Federal institution, he does not have access to Delaware Statutes, rules of court and reported opinions which are necessary for him to pursue a legal remedy here. We note and emphasize that such an argument cannot be applied to a direct appeal of a prison sentence because, as Chief Justice Burger observed when dissenting in *Bounds v. Smith*, supra, "[a]bundant access [to the courts for direct appellate review of a conviction] has been guaranteed by our prior decisions." 97 *S.Ct.* at 1501.

The opinions in *Bounds v. Smith*, supra, disclose not only strong and differing views of a state's duty to provide access, but they also reflect an understanding of the practical problems flowing from the result fashioned by the majority of the United States Supreme Court. And, importantly for present purposes, the Court's opinion permits flexibility in providing alternative means to achieve the goal. 97 *S.Ct.* at 1499, 1500. Clearly the Supreme Court's recitation of alternative means does not exhaust the possibilities and, on remand, the Trial Court should be aware of that.

### VI

On the basis of the present record, we cannot determine whether Johnson has been denied reasonable access to Delaware legal reference materials under the standards described herein or whether he has a reasonable alternative thereto. So a remand is required.

As we have noted, the Supreme Court of the United States has suggested various alternatives, giving the States needed flexibility in formulating programs to insure "meaningful access" to the courts. Consequently, in determining whether Delaware has met its constitutional obligation, the Superior Court is directed to consider all relevant factors, including whether a prisoner has access to: (a) a law library containing general legal materials; (b) Delaware Statutes, reported opinions and court rules; (c) legal counsel, whether retained, appointed or provided pursuant to a voluntary program; (d) legal assistance from paralegals, law students or other paraprofessionals (preferably under the supervision of an attorney); or (e) other similar programs or facilities.

Specifically, in this case, the Superior Court must consider the above factors in addition to Johnson's claim that the unavailability of access to Delaware legal materials and the limited number of first-class stamps available to him violates the Federal/State agreement under which he was transferred. We also note that Johnson may have the requisite access to the Delaware Courts as a result of the appointment of counsel in his many different litigations, including appeals to this Court, and, as a result of such representation, he may not be entitled to relief or, if he is, relief might be given by broadening the appointment of a Delaware attorney who is representing him.

The judgment of the Superior Court is reversed and the case is remanded for proceedings consistent herewith.