# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JANET BATCHELOR,

           PLAINTIFF,

           v.

ALEXIS PROPERTIES, LLC,
BB PROPERTIES OF DELAWARE,
LLC, JOHN WELCOME d/b/a
WELCOME HOME REALTY, and
LIVEINDE.COM, INC.,

           DEFENDANTS.

    **C.A. No. K17C-11-001 NEP**
    **In and For Kent County**

## OPINION AND ORDER

Submitted: November 2, 2018
Decided: November 13, 2018

Before the Court are Defendants John Welcome (hereinafter "Welcome"), Alexis Properties (hereinafter "Alexis"), Liveinde.com, Inc. (hereinafter "Liveinde.com"), and BB Properties of Delaware, LLC's (hereinafter "BB Properties" and collectively with Welcome, Alexis, and Liveinde.com, "Defendants") Motion to Dismiss Plaintiff's Amended Complaint. The motion requests dismissal of all or, in the alternative, part of the counts of the amended complaint filed by Ms. Janet Batchelor (hereinafter "Plaintiff"), who seeks damages relating to a rental agreement (hereinafter the "Rental Agreement") of a property located at 5099 N. Dupont Hwy. Ste B, Dover, DE 19901 (hereinafter the

"Property"). For the reasons set forth below, Defendants' motion is **DENIED** in part and **GRANTED** in part.

## I.    Factual Background and Procedural History

The Court has addressed the background facts and procedural history in its February 23, 2018, and April 3, 2018, rulings on motions to dismiss and motions for reargument previously filed in this case. The Court refers to those rulings for a more complete recitation of the facts of the case, and shall here only briefly recite the allegations of the complaint for context.[1]

On May 4, 2016, Plaintiff signed the Rental Agreement, which would lease the Property, owned by BB Properties, to "Dance Energy"[2] for the term of June 1, 2016, to May 31, 2017. Defendants later allegedly committed breaches of the Rental Agreement that caused Plaintiff damages and forced her to vacate the Property.

Several motions to dismiss were filed before the Court, which were ultimately denied. On August 30, 2018, Plaintiff was granted leave to amend her complaint, which was subsequently filed on September 11, 2018. The motion to dismiss presently before the Court was filed on October 11, 2018.[3]

---

[1] *Savor Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (on a motion to dismiss "all well-pleaded factual allegations are accepted as true.").

[2] In the Rental Agreement, the tenant is referenced as "Dance Energy" rather than "Dancenergy," which is the term used in the First Amended Complaint.

[3] Defendants originally attempted to file the motion on October 1, 2018, but the motion exceeded the permitted length. Defendants sought, and were granted, a page extension, after which they filed the motion.

Plaintiff argues that the motion to dismiss should be denied as untimely and that Defendants should be required to file an answer to the First Amended Complaint. Defendants conceded at oral argument that, pursuant to Superior Court Civil Rule 15(a), their motion should have been filed within 10 days of service of the First Amended Complaint, or Defendants should have asked for additional time to file the motion. However, as the Court explained at oral argument, it is unwilling to grant the relief requested by Plaintiff, as this would unnecessarily multiply and prolong the

Defendants move to dismiss Plaintiff's amended complaint on the following grounds: (1) Plaintiff lacks standing; and Plaintiff has failed to plead facts sufficient to support claims for (2) abuse of process, (3) the Uniform Deceptive Trade Practices Act, (4) the Federal Fair Debt Collection Practices Act, and (5) misappropriation of escrow funds.

## II. Discussion

On a motion to dismiss, the moving party bears the burden of demonstrating that "there are no material issues of fact and that he is entitled to judgment as a matter of law."[4] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[5] Additionally, "a *pro se* pleading is judged by a 'less stringent standard' than a pleading or document filed by an attorney."[6]

---

proceedings: Defendants, after filing an answer, could seek the same relief they are currently seeking by filing a motion for judgment on the pleadings pursuant to Superior Court Civil Rule 12(c), which would be decided pursuant to an identical standard. Therefore, the Court will consider Defendants' current motion despite its untimely filing.

[4] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).

[5] *Savor*, 812 A.2d at 896–97.

[6] *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982) (quoting *Bounds v. Smith*, 430 U.S. 817, 826 (1977)).

3

## A. Plaintiff's Alleged Lack of Standing

Defendants argue that dismissal is warranted for lack of standing. Alexis and Welcome have previously sought dismissal of Plaintiff's claims based on lack of standing because Plaintiff is suing for breach of a rental agreement even though she is not the tenant named in the agreement: as mentioned previously, the Rental Agreement names "Dance Energy" as the tenant, with Plaintiff merely signing the agreement. Defendants have also previously argued that Plaintiff's claims should be dismissed because Dancenergy is the real part in interest and, as an alleged "artificial entity," must be represented by an attorney in this action. Defendants, as before, cite to Rule 57 of the Delaware Supreme Court, which provides that in the context of proceedings before the Justice of the Peace Court, persons "transacting business in Delaware that have or should have filed a certificate with the Prothonotary's office designating a trade name" are to be considered artificial entities.[7] Under Delaware law, artificial entities can only act before a court "through an agent duly licensed to practice law."[8] However, as was previously held by this Court, Rule 57 does not apply to proceedings before the Superior Court.[9]

Plaintiff previously responded to these arguments by arguing that she does have standing to bring suit: while the lessee was named as "Dance Energy" in the Rental Agreement, she asserts that she was the "sole proprietor" of the dance studio and that "Dancenergy" is a fictitious name for which a proper application had been filed.

---

[7] Del. Supr. Ct. R. 57(a)(1).

[8] *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936 1990 WL 168276, at *1 (Del. 1990).

[9] Rule 57 expressly notes that the definitions provided are only "[f]or purposes of this Rule."

With the instant motion, Defendants repeat the same arguments from the previous proceedings. Defendants argue that Dancenergy signed the Rental Agreement through its agent Janet Batchelor, and that Dancenergy is the real party in interest. Defendants further argue that Plaintiff engaged in business under the trade name Dancenergy and that Plaintiff is not the same legal entity as Dancenergy for the purposes of these proceedings.

The Court finds that Defendants have cited to no new authority to indicate that Dancenergy is the real party in interest or that Plaintiff, trading as Dancenergy, is an artificial entity, nor have Defendants cited to any authority for the proposition that Rule 57 applies to the case at hand. Consequently, Defendants' motion to deny Plaintiff's amended complaint in its entirety for lack of standing is denied. Additionally, the Court notes that Superior Court Civil Rule 12(f) empowers the Court to strike from pleadings any "insufficient defense or any *redundant*, immaterial, impertinent or scandalous matter." The Court reminds Defendants that it has already made a decision as to the applicability, or lack thereof, of Rule 57 to the current proceedings, and that the Court has previously rejected the argument that Plaintiff lacks standing because the Rental Agreement names Dance Energy, not Plaintiff, as the tenant. The Court admonishes Defendants not to raise these arguments again.

## B. Plaintiff's Abuse of Process Claim

Defendants next argue that Plaintiff has failed to plead facts sufficient to support a claim for abuse of process. To establish such a claim, two elements must be present: " '(1) an ulterior purpose; and (2) a willful act in the use of the process

not proper in the regular conduct of the proceedings.' "[10] While satisfaction of the first element may be inferred if the second element is established, in order to establish the second element there must be a "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process."[11] Thus, some overt act must be performed *in addition to the initiating of the suit*, not simply filing or maintaining a lawsuit.[12] "Some form of coercion to obtain collateral advantage, not properly involved in the proceeding itself, must be shown, such as obtaining the surrender of property or the payment of money by the use of the process as a threat or club."[13]

Plaintiff alleges in her amended complaint that Welcome, on behalf of Alexis, filed a summary possession action against her months after she had vacated the premises, as well as a debt action six days later for monies not actually owed. According to Plaintiff, "Defendants' ulterior purpose in filing both the summary possession and debt action was to retaliate against and harm Plaintiff, and not to use the processes for the intended purpose." Plaintiff also alleges that the purpose of the summary possession and debt actions was not to regain possession and collect a valid debt, but rather to harm Plaintiff's record and collect on an illegitimate debt. Defendants, in response, allege that Plaintiff's allegations do not meet the elements of abuse of process, as Plaintiff cannot point to any factual basis for a "form of coercion to obtain collateral advantage not properly involved in the proceeding itself." Moreover, Defendants argue that Plaintiff's claim for abuse of process is

---

[10] *Korotki v. Hiller & Arban, LLC*, 2016 WL 3637382, at *2 (Del. Super. July 1, 2016) (quoting *Pfeiffer v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 7062498, at *5 (Del. Super. Dec. 20, 2011)).
[11] *Id.* (citing *Preferred Investment Services, Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *23 (Del. Ch. 2013)).
[12] *Id.* at *3.
[13] *Id.*

legally indistinguishable from Plaintiff's previous claim for malicious prosecution, which this Court dismissed.

It is worth noting that a claim for abuse of process, while similar, is not identical to a claim for malicious prosecution. In order to make out a claim for malicious prosecution, a plaintiff must show that (1) defendant instituted civil or criminal proceedings against plaintiff, (2) no probable cause existed to support the charge or claim, (3) the proceedings were instituted and pursued with malice, (4) the proceedings were terminated in plaintiff's favor, and (5) plaintiff suffered damages as a result.[14]

In contrast and as mentioned above, under a claim for abuse of process, a plaintiff need not plead damages or malice, but rather must show (1) an improper or wrongful purpose of the defendant in using the legal process and (2) a willful act not proper in the regular conduct of legal proceedings. This Court earlier dismissed Plaintiff's malicious prosecution claim because it found that she had not sufficiently pled damages. Thus, it would be improper for this Court to dismiss Plaintiff's abuse of process claim simply because her malicious prosecution claim failed based on the damages element.

Looking to Defendants' other argument, however, the Court agrees that Plaintiff has failed to show a "willful act in the use of the process not proper in the regular conduct of the proceedings."[15] An abuse of process claim "concerns 'perversion[s] of the process *after* it has been issued.'"[16] Here, Plaintiff has alleged the leaving of two voicemails, which she apparently perceived as threatening, *before*

---

[14] *See Kaye v. Pantone, Inc.*, 395 A.2d 369, 372-73 (Del. Ch. 1978); *Nix v. Sawyer*, 466 A.2d 407, 411-12 (Del. Super. 1983); *Stidham v. Diamond State Brewery*, 21 A.2d 283, 284-85 (Del. Super. 1941).

[15] *Korotki* at *2.

[16] *Id.* (quoting *Preferred Inv. Servs.*, at *23 (Del. Ch. July 24, 2013)) (emphasis added).

the two actions were filed, but she has alleged no other act in addition to the filing of suit that occurred *after* the filing of the two actions. As the *Korotki* Court observed,

> [a]buse of process "contemplates some overt act done *in addition to* the initiating of the suit" such that "the *mere filing or maintenance* of a lawsuit, even for an improper purpose, is not a proper basis for an abuse of process action."[17]

Because Plaintiff has failed to allege such an overt act, her claim for abuse of process must be dismissed.

### C. Plaintiff's Deceptive Trade Practices Claim

The next issue before the Court is Defendants' argument for dismissal of Count VII, deceptive trade practices. The Uniform Deceptive Trade Practices Act (hereinafter the "DTPA") was established "to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business."[18] The DTPA prohibits conduct that, among other things, "[c]auses likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another [and/or] [r]epresents that...a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."[19] In order to prevail under the DTPA, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.[20]

In this case, Plaintiff has alleged that Defendants acted deceptively by representing to Plaintiff that Welcome was managing the property "with the

---

[17] *Id.* at *3 (quoting Am.Jur.2d, *Abuse of Process* § 11) (emphasis added in *Korotki*).
[18] *Grand Ventures v. Whaley*, 632 A.2d 63, 65 (Del. 1993).
[19] 6 *Del. C.* § 2532(a)(3), (5).
[20] 6 *Del. C.* § 2532(b).

authority to show the commercial property, negotiate terms, draft a rental agreement, sign the agreement on behalf of the owners, collect a security deposit and collect rent." Plaintiff alleges that Welcome, on behalf of BB Properties and Alexis, was not licensed in the State of Delaware and was not authorized to act as their agent. Additionally, Plaintiff alleges that Welcome, on behalf of Alexis, falsely and deceptively indicated to Plaintiff that the Delaware Residential Landlord/Tenant Code was the controlling law for the Rental Agreement. This, in turn, forced Plaintiff to pay an additional two month's rent and utilities after the conclusion of the commercial lease term.

Defendants respond that the DTPA is inapplicable to the case at bar, as Plaintiff was a consumer of real estate services and does not have standing under the DTPA. Pursuant to the Delaware Supreme Court, "a litigant has standing under the DTPA only when such person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practices of another."[21] Defendants argue that Plaintiff fails to demonstrate how her business interest was directly affected by an alleged deceptive practice by Defendants.

The Court finds the Delaware Supreme Court's analysis in *Grand Ventures v. Whaley*[22] germane to the case at hand. In *Whaley*, the Delaware Supreme Court examined the DTPA, the legislative intent behind the statute, and the context of the DTPA with regard to its sister provision, the Consumer Fraud Act. The Court ultimately found that the Consumer Fraud Act provides for remedies for violations of the "vertical" relationship between a buyer or consumer and a producer or seller, while the DTPA provides remedies for violations of the "horizontal" relationship for

---

[21] *Grand Ventures*, 632 A.2d at 70.
[22] *Id.*

unreasonable or unfair interference between business interests.[23] Moreover, an injunction is the typical remedy for the interference prescribed by the DTPA.[24] "While a fraudulent act, or a pattern of such acts, may constitute violations of both the DTPA and the Consumer Fraud Act, the interests each statute seeks to protect and the injuries they are designed to redress, are different."[25]

In *Whaley*, the court found that the defendant was liable under the Consumer Fraud Act. Plaintiff had bought something from defendants which they had no right to sell, and was ultimately damaged by defendants' misrepresentations.[26] However, the plaintiff was not able to state a cause of action under the DTPA as it "had only a retail consumer relationship with the defendants. There was no horizontal business or trade interest at stake...."[27]

Similarly, the Court finds that Plaintiff was merely a consumer of the real estate services being offered by Defendants. Accordingly, she has failed to state a claim under the DTPA.

### D. Plaintiff's Fair Debt Collection Practices Act Claim

Looking next to Count VIII, Plaintiff alleges that Defendants made false and misleading representations in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter the "FDCPA"). Specifically, Plaintiff alleges that Welcome threatened to harm her reputation and falsely represented that the Delaware Landlord/Tenant Code applied to Plaintiff's commercial lease.

---

[23] *Id.* at 70.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*

Additionally, Plaintiff alleges that Welcome falsely represented that Plaintiff owed a debt and illegally attempted to collect on that debt.

In response, Defendants assert that they do not qualify as "debt collectors" under the statute, and that the underlying debt action of which Plaintiff complains was for rent owed, which does not constitute a "debt" under the statute.

The FDCPA regulates the practices of "debt collectors." The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[28] The FDCPA contains both a definition of "debt collector" and language describing categories of persons and entities excluded from the definition. Thus, this Court may find Defendants not liable under the statute if Defendants fail to qualify as "debt collectors" under the initial definitional language, or if they fall within one of the exclusions.

In determining whether the FDCPA applies to Defendants' alleged activity, the Court must first determine whether Defendants regularly collect debts or whether debt collection is the principal purpose of their business.[29] Thus, the Court must look to the definition of "debt collector" and whether Defendants qualify as "debt collectors" under the Act.

The term "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

---

[28] 15 U.S.C. § 1692(e).
[29] *See Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 203 (3d. Cir. 2012).

another."[30] This definition includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."[31] The term also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."[32]

This court, in *Shuler v. Daudt,* held that the term "debt collector" does not include creditors of the consumer.[33] Upon a careful review of the facts of this case, the Court simply cannot see how Defendants fall under the definition of "debt collector" in the FDCPA.

In *Route 40 Holdings v. Tony's Pizza & Pasta,*[34] which the Court finds applicable to the case at hand, this court found that a commercial lessor was not liable under the FDCPA, as the lessee's failure to pay rent under the lease was not a "debt" under the FDCPA and the lessor was not deemed to be a "debt collector."[35] The court found that because the plaintiff was not in the business of collecting debts and was a creditor of the defendants, it did not qualify as a "debt collector" and could not be liable under the FDCPA.[36]

Additionally, the FDCPA defines "debt" as "any obligation... of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family,

---

[30] 15 U.S.C. § 1692a(6)
[31] *Id.*
[32] *Id.*
[33] 1989 WL 16974, at *1 (Del. Super. Feb. 2, 1989).
[34] 2010 WL 2161819, at *2 (Del. Super. May 27, 2010).
[35] *Id.* at *2.
[36] *Id.*

or household purposes...."[37] Thus, the failure to pay rent under a commercial lease is not considered "debt" under the FDCPA.[38]

In addition to the request to dismiss the FDCPA claim, Defendants also seek costs and attorney's fees. The FDCPA provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."[39]

Defendants allege that Plaintiff has brought this claim in bad faith and that the claim is not only meritless under the law, but is also being pursued in a vindictive manner based upon the defamatory language of the complaint and the repetitive recitation of the facts. Examples of bad faith conduct include cases where "parties have unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims[,]...mis[led] the court, alter[ed] testimony, or chang[ed] position on an issue."[40] The Court finds no evidence in the First Amended Complaint or other pleadings to indicate that Plaintiff brought this claim in bad faith or for the purpose of harassing Defendants. Therefore, Defendants' request for attorney's fees and costs will be denied.

### E. Plaintiff's Claim for Misappropriation of Escrow Funds

Lastly, Defendants move to dismiss Plaintiff's claim for misappropriation of escrow funds. Plaintiff, in her amended complaint, alleges that Defendants have not returned her security deposit in the amount of $1,000.00 after the lease term ended.

---

[37] 15 U.S.C. § 1692a(5).
[38] *Route 40 Holdings*, 2010 WL 2161819, at *2.
[39] 15 U.S.C. § 1692k(a)(3).
[40] *Dover Historical Soc., Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1093 (Del. 2006) (*quoting Beck v. Atlantic Coast PLC*, 868 A.2d 840, 850-51 (Del. Ch. 2005)).

Additionally, Plaintiff alleges that Welcome was not authorized to accept escrow funds on behalf of another entity. Defendants argue that this claim is identical to the claim for relief in count IV of the First Amended Complaint, and that Plaintiff has failed to provide any statutory basis for her claim, nor has she cited to any legal authority upon which relief may be granted.

Upon review of a motion to dismiss, all well-pleaded allegations in the complaint are accepted as true.[41] However, the Court will not "accept conclusory allegations unsupported by specific facts."[42] "[A]t a minimum, the pleading must be adequate so the Court may conduct a meaningful consideration of the merits of [the plaintiff's] claims."[43] A complaint that is "merely a recitation of conclusory charges totally lacking in specificity . . . [is] properly dismissed under Superior Court Civil Rule 12(b)(6)."[44] Cognizant of the difficulties faced by *pro se* Plaintiffs, this Court holds a *pro se* Plaintiff's complaint to a less demanding standard of review.[45] However, "there is no different set of rules for *pro se* plaintiffs,"[46] and the Court's leniency cannot go so far as to affect the substantive rights of the parties.[47]

An escrow is essentially a written instrument deposited with a third party which, by its terms, dictates a legal obligation when deposited by a grantor or depositor until the happening of some specified event or the performance of some

---

[41] *Spence v. Funk,* 396 A.2d 967, 968 (Del. 1978); Del. Super. Ct. Civ. R. 12(b)(6).

[42] *Price v. E.I. DuPont de Nemours & Co.,* 26 A.3d 162, 166 (Del. 2011).

[43] *Alston v. Dipasquale,* 2002 WL 77116, at *2 (Del. Super. Jan. 4, 2002) (dismissing a *pro se* plaintiff's complaint for failure to state a claim).

[44] *Browne v. Robb,* 583 A.2d 949, 953 (Del. 1990). *See also Tsipouras v. Szambelak,* 2012 WL 1414096 at *2 (Del. Super. Apr. 5, 2012) (dismissing a *pro se* complaint where complaint consisted of "a laundry list of conclusory allegations amounting to, so far as the Court can tell, nothing.").

[45] *Anderson v. Tingle,* 2011 WL 3654531 at *2 (Del. Super. Aug. 15, 2011).

[46] *Draper v. Med. Ctr. of Del.,* 767 A.2d 796, 799 (Del. 2001).

[47] *Anderson,* 2011 WL 3654531 at *2.

condition whereby the written instrument will be delivered to some grantee.[48] The written instrument of the escrow arrangement may include deeds, mortgages, and real estate sales contracts.[49] In the case of a real estate transaction, the buyer and seller must have agreed to the terms of a real estate sales contract before a valid escrow may be created.[50]

Here, upon review of the amended complaint, the Court finds that Plaintiff has failed to set forth sufficient facts and supporting legal authorities in her amended complaint, and that such failure warrants dismissal under Superior Court Civil Rule 12(b)(6). The Court can form no opinion as to the statutory or decisional basis for Plaintiff's claim pursuant to the factual statements from Plaintiff's complaint. Moreover, a diligent review of Delaware case law and authority similarly provides no elucidation as to the factual or legal basis for which Plaintiff is seeking relief. The Court finds this claim to be identical to Plaintiff's claim for relief in Count IV for breach of contract and that Plaintiff is seeking the same remedy in both claims, i.e., return of her security deposit as "compensatory damages." Because the complaint contains insufficient information to permit analysis by this Court, dismissal of this claim is appropriate.

---

[48] Am. Jur. 2d, Escrow § 1.

[49] *Id.*

[50] Agreement for sale of real property between buyer, seller, and escrow agent, Am. Jur. Legal Forms 2d, Escrow § 100:6; Provision for closing transaction through escrow agent in agreement for sale of real property, Am. Jur. Legal Forms 2d, Escrow § 100:8.

### III.    Conclusion

**WHEREFORE**, for the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint is **DENIED** as to Plaintiff's alleged lack of standing, and **GRANTED** as to Count VI: Abuse of Process, Count VII: Deceptive Trade Practices, Count VIII: Violations of the Fair Debt Collection Practices Act, and Count IX: Misappropriation of Escrow Funds.

**IT IS SO ORDERED.**

/s/ Noel Eason Primos

Judge

NEP/wjs
*Via File&ServeXpress, U.S. Mail & Email*
oc.    Prothonotary
cc.    Janet Batchelor
       Counsel of Record
       Robert B. Young, Esquire