# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ENZOLYTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 2021-0612-NAC |
| EMPIRE STOCK TRANSFER INC., | ) | |
| and DIMITAR SAVOV, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANT DIMITAR SAVOV'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSING COUNT II AS MOOT

WHEREAS:

1.     Plaintiff Enzolytics, Inc. (the "Company") is a publicly traded Delaware corporation.[1] At some point in 2018, the Company purportedly sold unidentified assets to a nondescript third party under a contract (the "Contract"). The Company has not produced the Contract, explained the circumstances of its formation, or cited to any provisions in it.

---

[1] The Company issues penny stocks that trade over the counter for less than $0.05 per share. *See ENZC*, OTC Mkts. Gp., https://www.otcmarkets.com/stock/ENZC/overview; *see generally Hamilton P'rs, L.P. v. Englard*, 11 A.3d 1180, 1189 n.3 (Del. Ch. 2010) ("I use the term 'penny stock' colloquially to refer to a speculative security, typically trading on the pink sheets . . . often for less than $3 per share . . . and for which little information is available to investors. Penny stocks have long provided opportunities for the unscrupulous to engage in fraud.").

2. "In conjunction with" the Contract, the Company allegedly issued stock to a Bulgarian resident, Defendant Dimitar Savov. Dkt. 20 ¶ 26. The Company does not allege that Mr. Savov is a party to the Contract or describe his relationship to it.

3. As "consideration" for the stock issued to him "in conjunction with" the Contract, Mr. Savov allegedly agreed to perform "incidental" tasks. *Id.* ¶ 31. The stock issued to Mr. Savov allegedly could not be transferred unless he completed the incidental tasks. *Id.* ¶ 30.

4. "Shortly after the consummation" of the Contract, Mr. Savov allegedly failed to perform the incidental tasks. *Id.* Then he tried to transfer the stock. So the Company sued him.

5. The Company brought this putative expedited action in July 2021. Its original complaint attached a summons directing service on Mr. Savov "at [his] address in accordance with the Hague Convention[.]" Dkt. 1. That instruction was invalid, because Bulgaria does not accept service under the Hague Convention unless the summons is translated to Bulgarian and processed through a central authority.[2] Company counsel did not recognize the error until almost six months later when he filed a "motion for alternate service of process by personal delivery" that, if granted, would have violated the Hague Convention. *See* Dkt. 32–33, 38.

---

[2] *See Declaration/Reservation/Notification of Republic of Bulgaria*, in *Status Table*, Hague Conf. on Priv. Int'l L. (HCCH), https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=28&disp=resdn.

6.      Before Mr. Savov received any service of process, the Company sought to block his trades through three separate motions for an *ex parte* TRO.  The first motion was denied because the Company failed to establish jurisdiction to enjoin an international party and did not allege an imminent trade.  Dkt. 27 at 3:15–17.  The second motion, which was misfiled as a "motion for a protective order," Dkt. 21, was denied for multiple reasons, including that it was brought against Defendant Empire Stock Transfer Inc., which lacked a property interest in the disputed stock, Dkt. 27 at 4–6.  And the third motion was withdrawn without explanation.  Dkt. 41.

7.      By the time it filed its second motion for an *ex parte* TRO, the Company had amended its complaint. The Amended Complaint alleges four counts against Mr. Savov: (i) "declaratory judgment and injunctive relief" ("Count I"); (ii) unjust enrichment ("Count III"); (iii) tortious interference with contractual relations ("Count IV"); and (iv) defamation ("Count V").  *See* Dkt. 20 ¶¶ 34–40, 52–80.

8.      The Company also alleges a claim against Empire ("Count II").  Count II requests an order enjoining Empire from executing a stock transfer "on the 31st day after September 2, 2021."  *Id.* ¶ 44.  Count II thus seeks injunctive relief from action that occurred 1.5 years ago and which was denied in the second TRO motion.

9.      It appears Mr. Savov was served with the Amended Complaint at some point in early 2022.  Mr. Savov answered the Amended Complaint and then moved *pro se* to dismiss it under Rule 12(b)(6).  Given that he filed an answer, the Court

3

construed his motion as a motion for judgment on the pleadings. At the Company's request, the Court entered a briefing schedule on the motion. *See* Dkt. 50.

10. Approximately two weeks after obtaining the briefing schedule it requested, the Company filed an "emergency motion to stay briefing[.]" Dkt. 51. The motion sounded in *forum non conveniens* and observed that Mr. Savov had recently filed a lawsuit in federal court against a transfer agent. The Company thus counterintuitively sought to freeze a preexisting case in which it had requested expedition and filed three *ex parte* TRO motions to prevent what it believed to be irreparably harmful trades on the ground that Mr. Savov sued someone else somewhere else. The Court denied the motion, rebuffing the Company's bid for further delay. *See* Dkt. 55 ("This case was filed nearly a year ago . . . . It has proceeded in fits and starts since then . . . . The court will not, however, allow . . . briefing to linger while a separate, later-filed action is litigated in federal court.").

11. The parties appeared electronically for oral argument on December 7, 2022. Before the hearing began, I was informed for the first time that Mr. Savov does not speak English. Company counsel represented that he was unaware of this fact, despite having litigated against Mr. Savov for well over a year. Regardless, I adjourned the hearing due to the absence of a court-certified translator. At Mr. Savov's request, and without objection from the Company, I deemed the motion submitted as of the hearing date. Dkt. 68. The motion is now ripe for decision.

4

NOW, THEREFORE, the Court having carefully considered the parties' arguments, IT IS HEREBY ORDERED, this 16th day of March 2023, as follows:

1. This Court will grant judgment on the pleadings if no material facts are in dispute and the movant is entitled to judgment as a matter of law. Ct. Ch. R. 12(c). In considering a Rule 12(c) motion, the Court accords the non-movant "the same benefits as a party defending a motion to dismiss." *Baldwin v. New Wood Res., LLC*, 283 A.3d 1099, 1121 (Del. 2022). As a result, the Court accepts all well-pleaded allegations as true and draws all reasonable factual inferences in favor of the non-movant. *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993). The Court, however, need not accept "every strained interpretation of the allegations, credit conclusory allegations . . . [un]supported by specific facts, or draw unreasonable inferences in the [non-movant's] favor." *City of Fort Myers Gen. Emps.' Pension Fund v. Haley*, 235 A.3d 702, 716 (Del. 2020) (internal quotation marks and citations omitted).

2. Mr. Savov challenges the Amended Complaint on numerous grounds, including that the Company has failed to produce the Contract or "any documents to serve as proof that [he] made any commitments in conjunction with" the Contract. Dkt. 43 ¶ 49. Mr. Savov titled this argument as "denial of fair trial." *Id.* ¶¶ 48–58. Seizing on that formulation, the Company blithely counters that "no trial has been scheduled." Dkt. 56 at 31. It does not address the merits of Mr. Savov's argument.

3. The Company's formalistic response runs contrary to principles of liberal construction applicable to *pro se* filings. *Pro se* filings are "judged by a less stringent standard than a pleading or document filed by an attorney." *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982) (internal quotation marks omitted). As a result, "Delaware courts, at their discretion, look to the underlying substance of a *pro se* litigant's filings rather than rejecting [the] filings for formal defects[.]" *Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008) (Strine, V.C.). Put differently, this Court "may look beyond a *pro se* litigant's uncounseled [argument] classifications to ensure his case is 'fully and fairly heard.'" *Mikkilineni v. PayPal, Inc.*, 2021 WL 2763903, at *7 (Del. Super. July 1, 2021) (quoting *Durham v. Grapetree, LLC*, 2014 WL 1980335, at *5 (Del. Ch. May 16, 2014)).

4. Here, Mr. Savov's "fair trial" argument, at its core, is an insufficient notice argument under Court of Chancery Rule 8. As explained below, that argument is dispositive of Counts I and III. Without Counts I and III, I lack jurisdiction to consider Count IV. And, under any analysis, I lack jurisdiction to consider Count V. [3] Accordingly, Mr. Savov's motion is granted in part. Separately, I dismiss Count II *sua sponte* as moot.

---

[3] Given these conclusions, I need not reach Mr. Savov's other arguments.

**Count I Fails To State A Claim**

5.      Count I alleges that Mr. Savov "failed to provide the agreed upon consideration . . . as he was obligated to do in conjunction with" the Contract. Dkt. 20 ¶ 36. That allegation asserts a breach of contract.[4] At the pleading stage of a written contract dispute, Rule 8 requires the plaintiff to take the basic and customary step of producing the agreement and citing to the provisions alleged to have been breached.[5] Failure to do so "is not a technical foot fault; it reflects, instead, a fundamental failure to give the [defendant] fair notice of the claim asserted against [him] as required by [] Rule 8." *Ryan v. Buckeye P'rs, L.P.*, 2022 WL 389827, at *6 (Del. Ch. Feb. 9, 2022), *aff'd*, 285 A.3d 459 (Del. 2022) (TABLE). This fair notice principle seems even more logical where, as here, a counseled entity has sued a *pro se* individual who does not speak English and resides in a foreign country.

6.      The Company has not alleged that Mr. Savov's "incidental tasks" were oral obligations or memorialized in any written agreement other than the Contract.

___

[4] Although Count I is framed as a claim for a declaratory judgment, the "Declaratory Judgment Act does not create substantive rights of any sort; it merely offers a procedural means for securing judicial relief[.]" *250 Exec., LLC v. Christina Sch. Dist.*, 2022 WL 588078, at *4 (Del. Ch. Feb. 28, 2022) (internal quotation marks omitted). So the Court must focus on the substance of the allegations to determine what type of "rights" or "status" the claimant seeks declared. 10 *Del. C.* § 6501. Here, the rights and status are contractual.

[5] *See Ryan v. Buckeye P'rs, L.P.*, 2022 WL 389827, at *6 (Del. Ch. Feb. 9, 2022), *aff'd*, 285 A.3d 459 (Del. 2022) (TABLE); *Erisman v. Zaitsev*, 2021 WL 6134034, at *8 & n.84 (Del. Ch. Dec. 29, 2021); *Coca-Cola Beverages Fla. Hldgs., LLC v. Goins*, 2019 WL 2366340, at *3 (Del. Ch. June 4, 2019); *US Ecology, Inc. v. Allstate Power Vac, Inc.*, 2018 WL 3025418, at *5–7 (Del. Ch. June 18, 2018), *aff'd*, 202 A.3d 510 (Del. 2019) (TABLE).

To the contrary, the Company repeatedly alleges that Mr. Savov's duties were imposed "in conjunction with" the Contract. Yet, the Company has not produced the Contract, explained the circumstances of its formation, or cited to any provisions in it that Mr. Savov allegedly breached. Accordingly, Count I fails under Rule 8.

7. This result should not be shocking. At the hearing on the Company's second motion for an *ex parte* TRO, the Court cautioned Company counsel that the Amended Complaint contained virtually no detail about the Contract or the source or nature of Mr. Savov's duties:

> I . . . have significant concerns about entering an *ex parte* TRO here, where I have almost no information about the obligations that the [Company] says were violated, whether Delaware law applies, and so forth. Frankly, I'm left more confused after today's call about the nature of the claim here and where Mr. Savov's obligations were created . . . .
>
> [Company] counsel should continue to update me on efforts to serve Mr. Savov . . . . But if that happens, [the Company will] need to show me . . . what the claims are. And for now, that seems to be a hurdle for the [Company].

Dkt. 27 at 5:5–12, 6:1–9. At that point in the case, the Company could have amended its complaint or at least sought to introduce exhibits raising a reasonable inference of a contract's existence. It did neither. Instead, the Company continued to press for interim injunctive relief, filed dilatory motions, and ultimately, elected to stand on the Amended Complaint when Mr. Savov moved to dismiss it. The Company's "serial" reliance on "unidentified contractual commitments" renders Count I deficient as a matter of law. *Erisman v. Zaitsev*, 2021 WL 6134034, at *8 & n.84

(Del. Ch. Dec. 29, 2021) (first citing *Coca-Cola Beverages Fla. Hldgs., LLC v. Goins*, 2019 WL 2366340, at *3 (Del. Ch. June 4, 2019); and then citing *US Ecology, Inc. v. Allstate Power Vac, Inc.*, 2018 WL 3025418, at *5–7 (Del. Ch. June 18, 2018), *aff'd*, 202 A.3d 510 (Del. 2019) (TABLE)).

8.      The Company replies in two odd ways.  First, the Company faults Mr. Savov for not "explain[ing] how he has been prejudiced." Dkt. 56 at 30.  One might have supposed the Company would be arguing that Mr. Savov does have notice, rather than that his lack of notice does not matter.  Even so, the burden is on the plaintiff—not the defendant—to "demonstrate the existence of the contract." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  And, as explained, "prejudice" is presumed under Rule 8 if a contract claimant utterly fails to produce any documents providing notice of a breach.

9.      Second, the Company attaches a declaration to its brief that purports to verify the Contract. *See* Dkt. 56 (Decl. of Harry Zhabilov).  One might have thought the Company would have attached the Contract itself, rather than testimony on it. Either way, the Company's bolstering is too little and too late.  A party "cannot supplement the complaint through its brief." *MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at *5 (Del. Ch. May 5, 2010).  And briefs do not amend pleadings.[6]  If the

---

[6] *See, e.g.*, *Akrout v. Jarkoy*, 2018 WL 3361401, at *3 n.23 (Del. Ch. July 10, 2018); *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143, 155 (Del. Ch. 2003); *Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002); *Cal. Pub. Emps.' Ret. Sys. v.*

Company had more information about Count I, it should have amended its pleadings. It did not.

10. Moreover, in ruling on a Rule 12(c) motion, the Court cannot consider documents attached to briefs without converting the motion to a motion for summary judgment. *See Jiménez v. Palacios*, 250 A.3d 814, 841 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020) (TABLE). I decline to do so here. The Company ignored multiple opportunities to amend Count I and has been playing hide the ball for almost two years. There is no need to wait anymore. Count I is dismissed.

**Count III Fails To State A Claim**

11. Count III asserts a claim for unjust enrichment. This claim fails too.

12. "Courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract." *Stone & Paper Invs., LLC v. Blanch*, 2020 WL 3496694, at *12 (Del. Ch. June 29, 2020). So "[a] party cannot seek recovery under an unjust enrichment theory if a contract 'is the measure of the [party's] right.'" *ID Biomedical Corp. v. TM Techs., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (alteration omitted) (quoting *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979)).[7]

---

*Coulter*, 2002 WL 31888343, at *12 (Del. Ch. Dec. 18, 2002); *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *24 n.214, *25 n.231 (Del. Super. Aug. 16, 2021).

[7] *Accord BAE Sys. Info. & Elec. Sys. Integration v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009); *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007); *Bakerman v. Sidney Frank Importing Co.*,

10

13.     The Company claims that Mr. Savov has been unjustly enriched by his retention of Company stock.  But Mr. Savov allegedly received that stock "in conjunction with" the Contract.  Indeed, the Company claims that any unjust enrichment resulted from "breaches [of his] obligations in conjunction with" the Contract.  Dkt. 20 ¶ 53.  "A claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties that gives rise to the unjust enrichment claim."  *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009).  Accordingly, Count III must be dismissed.

14.     True, parties may plead unjust enrichment alternatively to an express breach of contract claim.  But alternative pleading "does not obviate the obligation to provide factual support for each theory."  *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26, 2014) (internal quotation marks omitted).  In my view, allowing a party to avoid dismissal by never producing a contract it has relied on for years would create dangerous

___

2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006); *see Doberstein v. G-P Indus.*, 2015 WL 6606484, at *6 (Del. Ch. Oct. 30, 2015) (dismissing unjust enrichment claim where party failed to allege facts independent of allegations supporting an express breach of contract); *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *18 (Del. Ch. Sept. 18, 2014) ("'[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim[.]'" (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010))); *see also Garfield v. Allen*, 277 A.3d 296, 361 (Del. Ch. 2022) (declining to apply contract preclusion doctrine to unjust enrichment claim where, unlike here, the plaintiff alleged facts to support a breach of contract claim and dismissing the unjust enrichment claim would not have simplified the issues, but acknowledging that there "have been and will continue to be cases where it is beneficial" to apply the doctrine).

incentives and subvert the purpose of the unjust enrichment doctrine, which is to avoid injustice. Here, then, the Company cannot conceal the Contract from Mr. Savov and the Court and then argue that the Contract caused unjust enrichment.

15. The Company's failure to produce the Contract springs additional traps. For example, unjust enrichment claims cannot be used to extend contractual obligations to persons who are not parties to the contract. *See Kuroda*, 971 A.2d at 891–92. The Company does not allege Mr. Savov is a party to the Contract or specify the source of the obligations flowing "in conjunction with" it. The Company cannot elude dismissal by preventing me from determining if Count III improperly tries to capture a non-party. No matter how sliced, Count III does not make the cut.

**This Court Lacks Jurisdiction Over Count IV**

16. Count IV alleges tortious interference with a contract between the Company and a third party. Tortious interference claims are not equitable claims. And this one requests damages, not equitable relief. So Count IV depended on clean-up jurisdiction stemming from Counts I and III. Because I have dismissed those, I now lack jurisdiction over Count IV. *See FirstString Rsch., Inc. v. JSS Med. Rsch. Inc.*, 2021 WL 2182829, at *6 (Del. Ch. May 28, 2021) ("[*O]nce having acquired jurisdiction over part of a controversy,*" the Court may "continue to exercise jurisdiction over the entire controversy, even over those portions where there is an adequate remedy at law[.]" (emphasis added) (internal quotation marks omitted)).

**This Court Lacks Jurisdiction Over Count V**

17. Count V alleges defamation. This Court categorically lacks jurisdiction over these allegations, even under the clean-up doctrine. *See, e.g.*, *Smith v. Scott*, 2021 WL 1592463, at \*14 & n.143 (Del. Ch. Apr. 23, 2021) (summarizing governing principles, collecting authority, and noting limited exceptions not applicable here). So I will not consider Count V further.

**Count II Is Moot**

18. Separately and finally, Count II sought to block a stock transfer that was set to occur "on the 31st day after September 2, 2021." Dkt. 20 ¶ 44. So Count II is moot. Because mootness is a question of subject matter jurisdiction,[8] and the Company has not alleged facts suggesting that a transfer completed more than a year ago is "capable of repetition, but evad[ing] review,"[9] I dismiss Count II *sua sponte*.[10]

---

[8] *See, e.g.*, *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 435 n.43 (Del. Ch. 2007).

[9] *Cal. Pub. Emps.' Ret. Sys. v. Coulter*, 2005 WL 1074354, at \*3 (Del. Ch. Apr. 21, 2005) (quoting *Gen. Motors Corp. v. New Castle Cnty.*, 701 A.2d 819, 823 n.5 (Del. 1997)).

[10] *See* Ct. Ch. R. 12(h)(3). The Company perplexingly sought the same relief contemplated under Count II in its second motion for an *ex parte* TRO. *See* Dkt. 21 ¶ 17. That motion was denied on the merits. *See* Dkt. 27 at 4:11–19. So I am satisfied that the Company had notice of the possibility of Count II's dismissal.

13

19.     In sum, Mr. Savov's motion for judgment on the pleadings is GRANTED as to Counts I and III.  Accordingly, Counts I and III are DISMISSED WITH PREJUDICE.  Although I lack equitable jurisdiction over Counts IV and V, the Company may elect to transfer them to a Delaware court of law. *See* 10 *Del. C.* § 1902.[11]  Finally, Count II is DISMISSED as MOOT.

>                                    */s/ Nathan A. Cook*
>                                    Vice Chancellor Nathan A. Cook

---

[11] Failure to transfer Counts IV and V in conformity with the procedural requirements and time limitations of Section 1902 will result in dismissal of Counts IV and V with prejudice.